[No. G027302. Fourth Dist., Div. Three. June 6, 2002.]

In re the Marriage of STACY and KEVIN DOUGLAS HEGGIE.
STACY HEGGIE, Respondent, v.
KEVIN DOUGLAS HEGGIE, Appellant.

**COUNSEL**

George M. Kornievsky for Appellant.

Ian L. Flatley for Respondent.

**OPINION**

**SILLS, P. J.**—In the final analysis, all that supported the trial court's decision to set aside the stipulated judgment in this divorce case was an imbalance in the division of community property attributable to a run-up in stock values subsequent to the filing of the judgment. Not only is such an imbalance not enough to support a motion to set aside a judgment under section 473 of the Code of Civil Procedure (cf. *In re Marriage of Connolly* (1979) 23 Cal.3d 590 [153 Cal.Rptr. 423, 591 P.2d 911]), but section 2123 of the Family Code is plain that if a set-aside motion is supported only by an imbalance in the division of community property, the trial court *cannot* grant

the motion. We therefore reverse the order and direct the trial court to enter a new order denying the set-aside motion.[1]

## BACKGROUND

The husband had an IRA account composed of two high-tech stocks. The account was all community property. The wife also had an IRA account, of which a third was community.

In September 1999, after over a year of litigation and after trial had been continued to allow for settlement discussions, the couple entered into a stipulated judgment in which the husband was to "execute a rollover instruction transferring the sum of $47,578.09" from his IRA to the wife's IRA in order to "balance said accounts" based on the value of the two stocks as of June 30, 1999.[2]

There was a delay of a little more than three weeks from the time the stipulated judgment was filed (Sept. 28, 1999) to the time when the husband's attorney forwarded the IRA rollover instructions to the wife's attorney (Oct. 20, 1999). Here are the circumstances behind that delay according to the uncontroverted declarations[3] on both sides of the set-aside motion:

On September 13 the wife's attorney approved the stipulated judgment. The husband's attorney learned of the approval that day and prepared the IRA rollover instruction letter. The next day, September 14, the husband signed the instruction letter in his attorney's office. The husband's attorney kept the instruction letter in his file.

---

[1]All statutory references in this opinion to section 473 are to the Code of Civil Procedure. Any other undesignated statutory reference is to the Family Code.

[2]The IRA account statements of June 30 were the latest available at the time.

[3]The declarations do not contradict themselves in any way as to any of the facts. Unfortunately, both declarations also include a considerable degree of substantive argument. For example, the declaration of the wife's attorney stated such things as "I believe that the interests of justice required the Court to order an accounting and further division of this asset [the husband's IRA] as of November 11, 1999" and "the Court may set aside this Judgment based upon mistake, inadvertence, or excusable neglect under the provisions of Code of Civil Procedure Section 473 et. seq." The husband's attorney's declaration contained such statements as "Petitioner and her attorney are trying to change material provisions of the Further Judgment. This she cannot do." and "it is respectfully suggested that Petitioner is being somewhat avaricious relative to the IRA."

We recognize that it is very common for family law practitioners to include argument in their declarations (we know it is done all the time, and we do not want to single out the trial lawyers in this regard), but it is a sloppy practice which should stop. Even at its most benign, it is a practice that forces the trial and appellate courts, and opposing counsel, to sort out the facts that are actually supported by oath from material that is nothing more than the statement of an opinion ostensibly under oath. More fundamentally, however, it makes a mockery of the requirement that declarations be supported by statements made under penalty of perjury. The proper place for argument is in points and authorities, not declarations.

By September 17 all parties and their attorneys had signed the stipulated judgment, and it was submitted to the court that day. It was not filed until September 29, and a conformed copy was received by the husband's counsel on October 1. On October 1, the husband's attorney formally withdrew from the case and wrote wife's attorney, but neglected to include the IRA rollover instructions with his letter.

On October 14, the wife's attorney wrote to the husband, who was now in propria persona: "Please provide me proof that you have instituted transfer of the sum of $47,578.09, which is the amount due as of June 30, 1999, together with any interest which has accrued on that amount to date of transfer."

The husband wrote back two days later saying he didn't believe it was up to him to take any "further action regarding the IRA transfer" because it was up to the wife to use the " 'execution instruction' " *already provided* by the husband's erstwhile attorney.

On October 18 the wife's attorney replied that he had never received the transfer instructions. The husband called his former attorney that day, who then "realized the oversight" and forwarded the rollover instructions in a letter dated October 20. The wife's attorney received the instruction letter, according to his own declaration, in "late October of 1999" at which time he turned it over to the wife.

It was another three weeks or so, on November 11, before the actual rollover from the husband's account to the wife's account occurred. The way the rollover worked was that $47,578.09 *worth of stock* was transferred to the wife's IRA on November 11.

On March 27, 2000, one day before the expiration of six months from the date of the filing of the stipulated judgment, the wife filed a motion to set aside that part of the judgment dividing the community property in the couple's respective IRA accounts. The wife presented evidence that the value of one of the high-tech stocks had increased 140 percent from June 30, 1999, to March 27, 2000, and the other stock had increased 250 percent. She did *not* present any evidence of the value of the stocks on October 1 (the earliest date she might have received the IRA rollover instructions) or in "late October" when her counsel received them.

In a very brief hearing the trial judge granted the motion, ordering that the portion of the judgment regarding the division of the IRA's be set aside. The trial judge did not explain his reasons, but did ask husband's counsel, "did

you read the declaration?" which presumably referred to the declaration of the wife and her counsel. This appeal followed.

## DISCUSSION

*Stock Market Fluctuations Cannot Serve as the Basis for a Set Aside Motion*

■ Traditionally, set aside motions in family law court have been governed by section 473 when brought within six months after the entry of judgment, and by the common law of extrinsic fraud when brought afterwards. (See *In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051, 1068 [202 Cal.Rptr. 116] [after relief is no longer available under § 473 an otherwise valid and final judgment can only be set aside if obtained through extrinsic fraud]; see also *In re Marriage of Varner* (1997) 55 Cal.App.4th 128, 138-140 [63 Cal.Rptr.2d 894].)

The line between what was "extrinsic" fraud and what wasn't, however, proved to be a "repetitively troublesome issue in the family law field" (*In re Marriage Stevenot, supra,* 154 Cal.App.3d at p. 1056), and so in 1993 the Legislature undertook to rationalize the area by enacting sections 2120 through 2129 of the Family Code, also known as the "Relief from Judgment" chapter. (See Stats. 1993, ch. 219, § 108, pp. 1615-1617; see generally *Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1143-1148 [97 Cal.Rptr.2d 707].)

Section 473 and the Relief from Judgment chapter (specifically Fam. Code, § 2122) now coexist, operating as alternative bases for relief, depending on when the application is filed. Within the six-month time limit under section 473, a litigant may seek relief from a family law judgment under either the statute's mandatory·provisions (where the litigant's attorney is willing to swear to his own fault[4]) or its discretionary provisions (where the court "may" relieve a party of the consequences of his or her own mistake, inadvertence, surprise, or excusable neglect). Alternativelty, the litigant may seek relief under any of the specific grounds specified in Family Code section 2122. However, after the six months pass, the litigant is limited to just the grounds specified in section 2122, and still faces some time limits. (For example, mental incapacity is one of the specified grounds, and subdivision (d) of the statute requires an action or motion to set it aside "within two years after the date of entry of judgment.")

---

[4]When there is a proper affidavit of fault in the appropriate case, relief under section 473, subdivision (b) is mandatory and the trial court has no discretion (the "court shall . . . ."). The statute thus sets up one of the great zen paradoxes of the law—to be relieved of one's own malpractice one must first confess it.

There is one interesting interaction between the two statutory schemes: Family Code section 2123 necessarily superimposes a per se rule on the trial court's discretion under section 473.[5] Section 2123 is plain that where the only reason to set aside a judgment is that it was "inequitable when made," the trial court is affirmatively commanded *not* to set the judgment aside under "any" law. Section 2123 reads: "*Notwithstanding* any other provision of this chapter, or *any other law*, a judgment may not be set aside simply because the court finds that it was inequitable when made, nor simply because subsequent circumstances caused the division of assets or liabilities to become inequitable, or the support to become inadequate." (Italics added.) Thus to whatever degree section 473 jurisprudence might have, prior to the enactment of the Relief from Judgment chapter, countenanced the setting aside of a family law judgment because it was somehow "inequitable," that discretion has now been expressly curtailed.

Put another way, section 2123 represents a fixed legal principle that may not be substantively contravened by the trial court in considering a discretionary application for relief under section 473. In that regard, it has long been a feature of section 473 discretionary set-aside jurisprudence that, even though the trial court's decisions benefit from a highly deferential standard of review, they still cannot offend fixed legal principles. (See *Carroll v. Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 898 [187 Cal.Rptr. 592, 654 P.2d 775]; accord, *Lee v. Offenberg* (1969) 275 Cal.App.2d 575, 582 [80 Cal.Rptr. 136] [where sole issue is one of law, result cannot contravene result demanded by law].)

Not that the case law prior to the enactment of section 2123 was particularly favorable to set-aside applications based merely on imbalances in the division of assets, particularly imbalances caused by, in the words of the statute, "subsequent circumstances." The leading case on stock market fluctuations, *In re Marriage of Connolly, supra,* 23 Cal.3d 590, was quite clear that if information concerning a stock's value is readily obtainable from newspapers, a trial court has ample grounds to properly deny a spouse's set-aside request, even if the other spouse obtains what is, in hindsight, a windfall.[6] And while *Connolly* could not stand for the proposition that it was an abuse of discretion for the trial court to grant a set-aside motion under

---

[5]We do not address the degree, if any, that section 2123 might affect applications for relief under the mandatory (attorney-falls-on-sword) provisions of section 473.

[6]In *Connolly*, a couple owned 10,000 shares of stock in a company in which the husband was an outside director. The couple agreed to value the shares as of a certain date. The company had already made three unsuccessful attempts to go public. After the trial the court

such circumstances (because the trial court denied the set-aside motion, the high court had no occasion to consider whether the trial court could have properly granted it), it is worth noting that section 2123 actually goes *Connolly* one better. It leaves a trial court with no discretion to grant a motion based solely on an imbalance or "windfall" theory.

### *The Delay Here Was an Insufficient Ground for a Set Aside Motion*

So, besides the imbalance in the division of community property caused by the run of the high-tech stocks in the husband's IRA (which is clearly not sufficient under § 2123), what *was there* to justify the trial court's set-aside order?

We begin by noting what wasn't there.

First, the great policy of the law favoring the resolution of lawsuits on their merits (e.g., *H. A. Pulaski, Inc. v. Abbey Contr. Specialties, Inc.* (1969) 268 Cal.App.2d 883, 886 [74 Cal.Rptr. 590]) was not applicable here. This case involves a stipulated judgment after a period of litigation and settlement discussion with each side being represented by counsel, not a default done in a corner.

Second, there was no hiding or lack of disclosure of assets (cf. Fam. Code, § 2120). The *contents* of the husband's IRA were known to the wife and her counsel (a fact which parallels *Connolly*), and the information of the value and potential value of the stocks was public knowledge (ditto re *Connolly*). For the same reason, there is no basis for the application of any of the law governing missed assets (e.g., Fam. Code, § 2556; *Henn v. Henn* (1980) 26

---

set a value on the stock based on the husband's accurate testimony concerning recent sales, which it awarded to the husband. As an equalizing payment, the wife ended up with a note for $37,500 at 7 percent interest. (See *In re Marriage Connolly, supra*, 23 Cal.3d at pp. 594-596.)

Within a month of the filing of the judgment came yet another attempt at a public offering, this one (of course) being phenomenally successful, with the stock being traded at roughly four times the value at which the trial court awarded it to the husband. (See *In re Marriage Connolly, supra*, 23 Cal.3d at p. 596.) Just short of six months, the wife then filed a motion to set aside the judgment, on a fraud theory that he should have voluntarily revealed at trial (though he was never asked) the fact that the company contemplated a public offering.

The trial court denied the motion to vacate the judgment, and the Supreme Court affirmed, reasoning essentially that the wife had everything she needed to discover the potential value of the stock (including just cross-examining the husband at trial), and if she and her counsel chose not to investigate, they really had nothing to complain about. (See *In re Marriage of Connolly, supra*, 23 Cal.3d at p. 602.) The high court also noted that the wife might rationally prefer an interest bearing note than non-income-producing stock in a company which could well face bankruptcy if it didn't raise some cash in a successful public offering. (See *id.* at pp. 603-604.)

Cal.3d 323 [161 Cal.Rptr. 502, 605 P.2d 10]). The high-tech stocks in the husband's IRA were assuredly not missed.

Third, along the lines of disclosure, there was no obligation on the part of the husband to update the wife on the fluctuating values of the two stocks in his IRA. Both *Connolly* and *In re Marriage of Carter* (1971) 19 Cal.App.3d 479 [97 Cal.Rptr. 274] stand for the principle that a divorcing spouse dealing at arm's length with his or her soon-to-be ex, has, at least where the information is readily obtainable publicly, no obligation to inform the other of market values of fully disclosed securities. Indeed, in *Carter*, the appellate court made a point that listing of certain bonds by their book value, as distinct from their fair market value, was sufficient, because if the other spouse had wanted to know their fair market value, all she had to do was look them up in the Wall Street Journal. (See *id.* at p. 491; see also *In re Marriage of Melton* (1994) 28 Cal.App.4th 931, 938 [33 Cal.Rptr.2d 761] [upholding determination that there was no extrinsic fraud where spouse could have conducted discovery concerning projected retirement benefits, even though the other spouse misrepresented the value of the plan].) The same could be said for the wife here.

What we do have is a delay of a little more than three weeks in forwarding already signed IRA rollover instructions.

It is at this point that the substance of the deal is important. The wife didn't bargain for X shares of stock. She bargained for the equivalent of a cash buyout, down to the last nine cents. The nature of the bargain is confirmed by the wife's attorney's letter to the husband of October 14, asking for the IRA rollover instruction and *lost interest*.[7]

The lost interest attributable to the delay in forwarding the rollover instructions—a delay of less than a month—at most amounted to a sum less than $300, and even that assumes a rate of interest of 10 percent (the legal rate on judgments), which the wife wouldn't have been able to get under market conditions. There was, therefore, no reason for the trial court to set aside the bargain reached by the parties just for that lost interest. The court could have, under section 473 ("upon any terms as may be just") conditioned

---

[7]The suggestion that was insinuated in the wife's moving papers is that she would get interest from June 30, 1999. The actual text of the stipulation ("shall execute a rollover instruction transferring the sum of") belies any such idea, as do the events leading to it: The stipulation was, after all, not even approved by the wife's attorney or signed by her until mid-September 1999, and there is no express provision for interest from June 30.

denial of the motion on payment of the interest, which in all likelihood the husband would have forked over immediately.[8]

Nor was there any basis to suppose bad faith in the delay. The husband signed the rollover instructions before the judgment was filed and gave it to his attorney. His attorney simply forgot to send it in the letter that he no doubt hoped would conclude the case on October 1. When the matter was brought to the husband's attention 14 days later, the husband responded just as one would expect of someone who was genuinely surprised (he replied that it had already been provided to the wife's attorney), and, two days later, when the fact that it hadn't been provided was brought to his attention, he immediately called his attorney, who then took reasonably prompt action. That is not a scenario at all consistent with a studied sluggardliness intent on vexing an ex-spouse.[9]

In sum, there was no substantial reason other than the prospect of the husband's windfall to support the set aside motion. The case thus transposes into a pattern similar to *In re Marriage of Rosevear* (1998) 65 Cal.App.4th 673 [76 Cal.Rptr.2d 691] where the various bases for setting aside the judgment vanished upon close inspection. (See *id.* at p. 685.) We are left with the naked lopsidedness of the deal in hindsight, and under section 2123 that is not enough.

## DISPOSITION

The abuse of discretion in setting aside the stipulated judgment is manifest. The set-aside order found support only in a de minimis oversight, and thus contravened section 2123. It is therefore reversed, with directions to make a new order denying the set aside motion.

As it turns out, then, the fact that the wife waited until one day before the six-month period was to run to make her motion is quite irrelevant to our decision. She might have brought the motion in December and it would

---

[8]And, in fact, our opinion is without prejudice to the wife seeking the lost three weeks' interest in subsequent proceedings.

[9]Suppose there was evidence supporting an implied finding that the husband and his attorney had taken their languorous sweet time getting the IRA rollover instruction to the wife's attorney in the face of a linear increase in the values of the two high tech stocks in the husband's portfolio as one last nasty gesture to an ex-spouse? Would *that*, by itself, in light of the de minimis amount of prejudice and the ease by which it could be compensated for, be enough to bring the set aside decision within the "bounds of reason?" Or would it just be an occasion for pique, better dealt with in an attorney fee or sanction motion? Given the record here, we do not address the issue.

make no difference to our decision today. Her belatedness does, however, expose her wait-and-see, have-your-settlement-and-set-it-aside-too-if-stock-prices-go-up position. In contrast, the husband and his lawyer acted with dispatch when the oversight concerning the instructions was brought to their attention. Accordingly, in the interest of justice the husband will recover his costs on appeal.

Bedsworth, J., and Moore, J., concurred.