Filed 11/7/24  Gasparovic v. Gasparovic CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| TONY GASPAROVIC,<br><br>    Petitioner and Respondent,<br><br>v.<br><br>WANNEE GASPAROVIC,<br><br>    Appellant. | B316555<br><br>(Los Angeles County<br>Super. Ct. No. 19PSFL02331) |

APPEAL from an order of the Superior Court of Los Angeles County, Bryant Y. Yang, Judge.  Affirmed.

Wannee Gasparovic, in pro. per., for Appellant.

Moshtael Family Law and Daniel R. Knowlton for Petitioner and Respondent.

_____

# INTRODUCTION

Wannee Gasparovic appeals the family court's denial of her request for an order setting aside the 2020 judgment of dissolution of her marriage to Tony Gasparovic, which was entered pursuant to a marital settlement agreement between the parties after 20 years of marriage.[1]  Wannee raises a number of arguments, including that the marital settlement agreement was the product of fraud, mistake, inadvertence, surprise, and excusable neglect on her part, and that she signed it under duress, and seeks to set aside the judgment pursuant to Code of Civil Procedure section 473, subdivision (b), and Family Code section 2122.[2]  After a hearing with testimony from Wannee and Tony, the family court found that Wannee lacked credibility and that she had not demonstrated grounds to set aside the judgment entered on the marital settlement agreement.  We conclude the court did not abuse its discretion and affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Parties' Marriage and Dissolution*

Wannee and Tony were married in November 1999.  Before marriage, they signed a premarital agreement providing that all property they each might thereafter acquire, including earnings, real property, stock options, and retirement benefits or deferred compensation, would be the separate property of the earning

---

[1]    We refer to Wannee and Tony by their first names to avoid confusion; no disrespect is intended.

[2]    Undesignated statutory references are to the Family Code.

2

spouse. The premarital agreement was notarized and included certifications signed by each party's separate counsel that the parties had been advised of and understood the meaning and legal effect of the agreement, and each voluntarily executed the agreement in the presence of their attorney.

In December 2019, Tony filed a petition for dissolution of marriage.

In January 2020, Wannee and Tony signed a notarized marital settlement agreement.[3] It awarded to Wannee, among other things, her ownership interest in a restaurant, a 2016 Honda Accord, and an "equalization payment" of $10,000 that the agreement stated "represents an equal share of Wife's portion of community assets." It awarded to Tony, among other things, a residence in Diamond Bar, various bank accounts, all funds in his pension plan and retirement account, a 2018 Audi TT lease, and a 2009 Toyota Tacoma truck. The parties waived all rights to spousal support and reimbursement. Although the marital settlement agreement states both parties were represented by counsel, the parties later agreed that Wannee was not represented by counsel, and Tony declared that language was mistakenly left in by his attorney during drafting.

On March 13, 2020, the family law court entered a judgment of dissolution based on the parties' stipulated agreement.

---

[3] The settlement agreement stipulated that they separated on November 16, 2016, but Tony later declared this was a drafting error. The parties agree the correct date was November 16, 2019.

B.    *Request for Order To Set Aside the Judgment Entered on the Marital Settlement Agreement*

In November 2020, Wannee, through counsel, filed a request for order to set aside the entry of judgment. Wannee's form request for order did not state the statutory basis for her request, and the record does not include a memorandum of points and authorities. Wannee's request for order and supporting declaration did not include any argument that she was entitled to tolling of any filing deadline due to the COVID-19 emergency orders.

In support of the request for order, Wannee filed a declaration stating "the Judgment is based upon terms that [she] did not understand and is the product of fraud, mistake, inadvertence, surprise, and excusable neglect on [her] part." She further attested that she was pressured into signing the marital settlement agreement under duress and without counsel. Wannee also declared that Tony identified his pension and retirement account on his schedule of assets and debts but did not disclose the account balances or provide any account statements or pension information, and that she recalled "he made significant contributions to both of these accounts during our marriage."

Wannee further stated that because English was her second language, she did not understand the terms of the marital settlement agreement, including her waiver of spousal support or that the $10,000 payment and other property awarded to her under the agreement represented an equal division of community property. Wannee also stated Tony was verbally, physically, and sexually abusive to her during the last few years of their marriage.

4

Tony filed an opposition arguing, as relevant here, that Wannee's request for order was procedurally defective because she filed no memorandum of points and authorities, was untimely as to any argument under Code of Civil Procedure section 473, subdivision (b), because it was filed more than six months after judgment was entered, and should be denied on substantive grounds because nothing in Wannee's moving papers warranted granting the motion under Family Code sections 2122 and 2123. In his supporting declaration, Tony stated that Wannee had "good English skills," took English courses at a local college, and had worked in the United States for 24 years. He stated she had "the reading and comprehension skills to understand business investments on [the] Nasdaq stock market and has been trading on-line stock for the past 20 years," managed and operated her own restaurant, and had many years of experience with accounting, payroll, and taxes, including 20 years of working with an accountant to complete their personal income taxes while married.

Tony also attested Wannee verbally abused him and pressured him to agree to a divorce for many years, and he did not harass her or pressure her into signing the martial settlement agreement. According to Tony, they discussed and agreed to all terms of their divorce before the agreement was drafted, Wannee proposed the $10,000 settlement, and Wannee reviewed the documents privately before they went to a notary to sign them. He also stated Wannee took his retirement account statements and certain pension information when she moved out, which was why that information was missing from his initial disclosures.

Tony attached text messages between the parties reflecting that in June 2019, Wannee wrote to him: "Give me 10 k ¶ So I can divorce you." When he replied, "No you complain too much," she responded, "So give me 10 k no more complaints." In December 2019, Wannee texted Tony: "Poki [restaurant] will help to pay my health insurance so you can terminate me after divorce. If you file tax return with me it will start after February month." In January 2020, Wannee texted Tony that she needed divorce papers to get a new identification card, and on January 19 wrote: "Can you take care papers faster I have something to do with my I d stuff so I can change my last name."

## C.    *The Hearing*

The family court held a hearing on Wannee's request for order on March 18 and August 12, 2021, at which Wannee and Tony testified. Both parties were represented by counsel at the hearing. Wannee's counsel stated at the hearing that Wannee was proceeding under Code of Civil Procedure section 473, subdivision (b), and Family Code section 2122.

Wannee testified with the assistance of a Thai language interpreter. Wannee testified she did not speak English well and was not fluent in reading or writing English. She could speak English for "normal daily life." She testified that at the time she signed the premarital agreement in 1999, she was "hardly" able to read English. She testified her attorney and a friend who spoke Thai explained the content of her declaration in support of the request for order before she signed it. Wannee also testified her June 2019 text message was before the couple actually intended to divorce and was not intended as an offer to settle any future marital dissolution for $10,000.

She further testified that Tony presented the marital settlement agreement to her while she was working at her restaurant, and that he asked her to sign on the spot. According to Wannee, Tony did not tell her to get an attorney before signing. Wannee testified that when they were married, Tony was controlling and restricted her purchases. According to Wannee, Tony stopped paying her health insurance around June 2020, which was when she realized the marital settlement agreement cut off her right to support. She waited until October 2020 to ask the court to set aside the judgment because she first tried to contact Tony directly and through his brother (with no success), and attorneys she contacted during the COVID-19 pandemic were not returning her calls.

On cross-examination and subsequent direct examination by Tony's counsel, Wannee conceded that she: signed agreements for her restaurant in English with the help of her business partner; communicated with her attorney in English; and completed her schedule of assets and debts and income and expense declaration for the divorce in English without assistance. Wannee testified she had lived in the United States for over 20 years and had co-owned her restaurant for three years with a business partner. She took an English class at one point for a little over a year. She also bought and traded stocks online through an English language online brokerage account.

Wannee also testified her December 2019 text message stating Tony could cancel her health insurance was her "just being sarcastic," and the June 2019 text message exchange asking for $10,000 was "more like kidding or joking around." When asked whether the marital settlement agreement reflected her text request for $10,000, Wannee stated: "I did not read the

MSA [marital settlement agreement]," and later confirmed that she did not read the agreement or the waiver of final declarations of disclosure before she signed it. Wannee conceded she told Tony she wanted a "fast" divorce, did not want to go to court, and did not want a lawyer. She stated that even before divorce proceedings started, she "just want[ed] it to be fast, only fast," so that her life could get better. Wannee further testified she did not actually sign the marital settlement agreement at her restaurant, but at a different location with a notary.

Tony testified his retirement statement and pension information was missing from his initial disclosures because Wannee took those documents from the house when she moved out. He did not search for that information himself before filling out his disclosures. After he gave her the marital settlement agreement at her restaurant, he testified that Wannee reviewed it by herself in her office, where she also had also previously filled out other divorce documents. Wannee and Tony then signed the marital settlement agreement before a notary at a package and shipping store. Tony testified that they had discussed the terms of the agreement for a few months beforehand. Tony returned to the restaurant later with Wannee's permission because she had not signed one document, and she came to his house the following day to initial an additional change to a bank account listing before the documents were filed with the court. Tony and Wannee communicated in English.

D. *The Family Court Denies the Request To Set Aside the Judgment Entered on the Marital Settlement Agreement*

After hearing the testimony from the parties and the arguments of counsel, and receiving the parties' declarations into

8

evidence, the family court denied Wannee's request for order with prejudice pursuant to Code of Civil Procedure section 473 and Family Code sections 2121 and 2122.[4]

The court stated it "does not find [Wannee] credible." "[Wannee] has consistently contradicted herself. She states she cannot understand English, except all of the communications that ha[ve] occurred between the parties were in English. All the text messages were in English. She has told the translator today she understands all of the proceedings and does not need translation. . . . And there's been other inconsistencies[,] including where the settlement agreement was signed." The court found Wannee was "a sophisticated business woman" who ran her own restaurant, traded stocks online, and dealt with contracts in her business, although she sometimes sought help from her business partner in looking over her business contracts.

The family court noted that under Code of Civil Procedure "section 473, a judgment cannot be vacated after six months. And certainly the judgment was filed on March 13, 2020, and the Motion to Vacate was not filed until November 5th, 2020. Under section 473, the judgment could still be vacated if it was a result of extrinsic fraud and mistake, but the court is not convinced[.]" The court explained that "extrinsic fraud, extrinsic mistake, those refer to when someone is deprived of a hearing. Judgment cannot be vacated simply because a spouse relied on the representation of the other spouse. It cannot be vacated when one party is guilty of negligence in contributing to the situation and if the party could have reasonably discovered the mistakes."

---

[4]     Although the family court's order states it was ruling under "Family Code Section 473," the parties agree the court was referring to Code of Civil Procedure section 473.

9

The court also "denie[d] [Wannee]'s request to vacate under Family Code sections 2121 and 2122 for the same reasons." With regard to Tony's disclosures, the court found: "I don't think there's a dispute that there were disclosures in this case. It wasn't to the specificity that [Wannee] wanted, but she could have followed up and found out what his pensions were, and so forth. So for all of those reasons, the court's going to deny the motion to vacate."

The court further stated, "the real issue is that [Wannee] realizes the agreement she signed is in her mind now inequitable. But Family Code section 2123 makes it clear a judgment may not be set aside simply because a party or the court finds that it was inequitable when it was made or simply because subsequent circumstances cause the division of assets or liabilities to become inequitable." The court told Wannee: "In this case, ma'am, you could have asked somebody . . . to have looked over it. . . . [Y]ou could have done your diligence."

Wannee timely appealed.[5]

## DISCUSSION

A.    *Governing Law and Standard of Review*

A party to a marital settlement agreement may move to set aside the judgment entered on the agreement under the Code of Civil Procedure or the Family Code. Code of Civil Procedure section 473, subdivision (b), provides that a court may relieve a

---

[5]    We deny as unnecessary Wannee's request for judicial notice of Tony's proof of service on Wannee of the family court's orders. The court's orders were entered on September 8, 2021, and Wannee timely appealed on Monday, November 8.

party from a judgment based on "his or her mistake, inadvertence, surprise, or excusable neglect," if the application is made within six months of the judgment.  Additionally, "[i]n proceedings for dissolution of marriage, . . . the court may . . . relieve a spouse from a judgment, . . . adjudicating support or division of property, after the six-month time limit of Section 473 of the Code of Civil Procedure has run," based on specific grounds and time limits provided in the Relief from Judgment chapter of the Family Code.  (Fam. Code, § 2121, subd. (a); see § 2120 et seq. [Relief from Judgment].)  The legislative intent of the Relief from Judgment provisions was to rectify what the Legislature saw as the inconsistent application of equitable common law principles of extrinsic fraud and mistake in the family law field after the six-month deadline of Code of Civil Procedure section 473.[6]  (See *Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1143-1144 (*Rubenstein*); *In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 32 (*Heggie*); see also *In re Marriage of Thorne & Raccina* (2012) 203 Cal.App.4th 492, 501 [after the time limits of Code Civ. Proc., § 473, subd. (b), and Fam. Code, § 2122, "the trial court may give equitable relief from an otherwise valid judgment for extrinsic fraud or mistake"].)

As relevant here, section 2122 provides that either party may institute an action to set aside a judgment of dissolution on the grounds of "(a) Actual fraud . . . brought within one year after

---

[6]     For example, in providing relief for "actual fraud," section 2122, subdivision (a), eliminated the distinction between extrinsic fraud and intrinsic fraud.  (See *Rubenstein, supra,* Cal.App.4th at p. 1144, fn. 7; *Kuehn v. Kuehn* (2000) 85 Cal.App.4th 824, 833.)

11

the date on which the complaining party either did discover, or should have discovered, the fraud"; "(c) Duress . . . brought within two years after the date of entry of judgment"; "(e) As to stipulated or uncontested judgments . . . , mistake, either mutual or unilateral, whether mistake of law or mistake of fact[,] . . . brought within one year after the date of entry of judgment"; and "(f) Failure to comply with the disclosure requirements of Chapter 9 (commencing with Section 2100)[,] . . . brought within one year after the date on which the complaining party either discovered, or should have discovered, the failure to comply." (§ 2122; see *In re Marriage of Georgiou & Leslie* (2013) 218 Cal.App.4th 561, 569 [discussing § 2122].)

Code of Civil Procedure section 473 and Family Code section 2122 "coexist, operating as alternative bases for relief, depending on when the application is filed. Within the six-month time limit under section 473, a litigant may seek relief from a family law judgment under . . . its discretionary provisions (where the court 'may' relieve a party of the consequences of his or her own mistake, inadvertence, surprise, or excusable neglect). Alternative[ly], the litigant may seek relief under any of the specific grounds specified in Family Code section 2122. However, after the six months pass, the litigant is limited to just the grounds specified in section 2122, and still faces some time limits." (*Heggie, supra,* 99 Cal.App.4th at p. 32.)

In addition, section 2123 provides that "'[n]otwithstanding any other provision of this chapter, *or any other law*, a judgment may not be set aside simply because the court finds that it was inequitable when made, nor simply because subsequent circumstances caused the division of assets or liabilities to become inequitable, or the support to become inadequate.'" Thus,

"to whatever degree section 473 jurisprudence might have, prior to the enactment of the Relief from Judgment chapter, countenanced the setting aside of a family law judgment because it was somehow 'inequitable,' that discretion has now been expressly curtailed." (*Heggie, supra,* 99 Cal.App.4th at p. 33; see *id.* at p. 34 [§ 2123 "leaves a trial court with no discretion to grant a motion based solely on an imbalance or 'windfall' theory"].)

We review the family court's application of Code of Civil Procedure section 473 and Family Code section 2122 for abuse of discretion. (See *Elston v. City of Turlock* (1985) 38 Cal.3d 227, 236; *In re Marriage of Varner* (1997) 55 Cal.App.4th 128, 138.) In so doing, "[t]he trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712.)

B. *The Family Court Did Not Abuse Its Discretion by Declining To Set Aside the Judgment Entered on the Marital Settlement Agreement*

1. *Wannee's request for relief under Code of Civil Procedure section 473 was untimely, and she forfeited any argument tolling applied*

Wannee raises two arguments relating to Code of Civil Procedure section 473, subdivision (b). First, she argues that the family court should have found her request was timely even though it was filed after the six-month deadline under that provision because she was entitled to tolling due to COVID-19 state and local emergency public health orders. Second, Wannee

13

argues she was entitled to relief under that provision due to "mistake, inadvertence, surprise, or excusable neglect." Because we conclude Wannee forfeited the first contention, we do not reach the second.[7]

It is undisputed that Wannee's request for relief under Code of Civil Procedure section 473, subdivision (b), was untimely. Wannee filed her request to set aside the judgment entered on the marital settlement agreement on November 5, 2020, which was almost eight months after judgment was entered on March 13, 2020. But the "six-month time limitation is jurisdictional; the court has no power to grant relief under [Code of Civil Procedure] section 473 once the time has lapsed." (*Austin v. Los Angeles Unified School Dist.* (2016) 244 Cal.App.4th 918, 928.) The family court did not abuse its discretion by denying relief under Code of Civil Procedure section 473, subdivision (b).

Wannee argues she was entitled to tolling of the six-month deadline due to various COVID-19 public safety orders. But Wannee did not raise her tolling argument in the family court, whether in her written request or through the argument of counsel at a hearing. "It is well settled that the failure to raise an issue in the trial court typically forfeits on appeal any claim of error based on that issue." (*Howitson v. Evans Hotels, LLC* (2022) 81 Cal.App.5th 475, 489 (*Howitson*).) Wannee argues that she can raise tolling for the first time on appeal because it is a "question of law as to whether tolling applies" because her argument "is presented on facts appearing in record." She cites

---

[7] Wannee makes no argument that extrinsic fraud or mistake applies.

*Ward v. Taggart* (1959) 51 Cal.2d 736, 742, but that case did not involve tolling of any statute, let alone tolling of a jurisdictional deadline like that in Code of Civil Procedure section 473, subdivision (b). Instead, *Ward* allowed the plaintiffs to raise a different theory of legal liability based on the evidence presented at trial. (See *Ward*, at p. 742 ["Although the facts pleaded and proved by plaintiffs do not sustain the judgment on the theory of tort, they are sufficient to uphold recovery under the quasi-contractual theory of unjust enrichment since that theory does not contemplate any factual situation different from that established by the evidence in the trial court."].)[8]

2.      *The Family Code's Relief from Judgment provisions (§§ 2121, 2122 and 2123)*

The Family Code's relief from judgment provisions authorize relief even after six months have elapsed from entry of the challenged judgment. (See § 2121, subd. (a).) Wannee argues the family court abused its discretion under section 2122 by denying her request to set aside the judgment entered on the marital settlement agreement because (1) Tony committed actual fraud and failed to comply with disclosure requirements, (2) Tony placed her under duress, and (3) she mistakenly did not understand the legal implications of the marital settlement agreement.[9] Tony argues, in essence, that the family court found

---

[8]      We deny as unnecessary Wannee's second motion for judicial notice of certain COVID-19 state and local emergency public health orders.

[9]      Wannee's second motion for judicial notice also requests notice of various text messages she exchanged with Tony between

Wannee was not credible and that she failed to prove any grounds for relief.

On appeal, "'[i]t is not our role to reweigh the evidence, redetermine the credibility of the witnesses, or resolve conflicts in the testimony, and we will not disturb the judgment if there is [substantial] evidence to support it.'" (*Williamson v. Brooks* (2017) 7 Cal.App.5th 1294, 1300; see *Garcia v. Stoneledge Furniture LLC* (2024) 102 Cal.App.5th 41, 54 ["It is not our role to reweigh the evidence or substitute our factual determinations for that of the trial court."]; *In re Marriage of Destiny & Justin C., supra,* 87 Cal.App.5th at p. 770 ["we are not at liberty to second-guess the trial judge's firsthand evaluation of [a witness's] credibility"].) Here, the court found Wannee was not credible, noting she "consistently contradicted herself" regarding her command of English, and her testimony had other inconsistencies relating to where and when she actually signed the divorce documents. As we must, we defer to the family court's determination of Wannee's credibility in our review and examine whether its rulings were supported by substantial evidence.

---

January and June 2020. She relies on Evidence Code section 452, subdivision (h), but this subdivision "is intended to cover facts which are not reasonably subject to dispute and are easily verified. These include, for example, facts which are widely accepted as established by experts and specialists in the natural, physical, and social sciences which can be verified by reference to treatises, encyclopedias, almanacs and the like or by persons learned in the subject matter." (*Gould v. Maryland Sound Industries, Inc.* (1995) 31 Cal.App.4th 1137, 1145.) We decline to take judicial notice of text messages between the parties.

16

### a.    *Fraud*

Wannee argues the judgment should have been set aside because she proved "'[a]ctual fraud where the defrauded party was kept in ignorance or in some other manner was fraudulently prevented from fully participating in the proceeding" pursuant to section 2122, subdivision (a).  Wannee argues no one helped her read the marital settlement agreement before she signed it; she trusted Tony while they were getting divorced, and he promised not to cut off support after divorce; Tony did not tell her to get legal counsel before signing, even though the marital settlement agreement stated she was represented by counsel; and Tony asked her to sign the agreement immediately at her restaurant. She also argues Tony did not disclose the value of his assets or retirement accounts and asserts the judgment should also be set aside under section 2122, subdivision (f), for this reason.

The family court found Wannee was a "sophisticated business woman" who dealt with contracts in her business and who "could have done [her] diligence."  Further, the evidence before the family court included Tony's testimony that she had "good English skills" and time to review the documents alone in her restaurant's office before she signed them with Tony at a different location before a notary.  Wannee conceded that she told Tony she did not want a lawyer, wanted a "fast" divorce out of court, and that she was aware he made significant contributions during marriage to his retirement accounts.  There was also testimony from Tony that Wannee possessed copies of his pension and retirement account statements, which she took when she left the house.  The family court did not abuse its discretion in concluding that Tony's actions did not amount to actual fraud. (See § 2122, subd. (a).)

Nor did the court abuse its discretion in concluding that Tony's omission of his retirement account balances and pension valuation in his initial disclosures did not merit setting aside the judgment under section 2122, subdivision (f). It is undisputed that Tony disclosed the existence but not the value of his pension and retirement accounts. "[A] full and accurate disclosure of all [the parties'] assets and liabilities . . . must be made in the early stages of a proceeding for dissolution of marriage." (§ 2100, subd. (c).) Under section 2104, subdivision (c), "The preliminary declaration of disclosure shall set forth . . . all of the following: [¶] (1) The identity of all assets in which the declarant has or may have an interest . . . regardless of the characterization of the asset . . . . [¶] (2) The declarant's percentage of ownership in each asset . . . when property is not solely owned by one or both of the parties." And section 2107, subdivision (a), provides that: "If one party fails to serve on the other party a preliminary declaration of disclosure under Section 2104, . . . or fails to provide the information required in the respective declarations with sufficient particularity, and if the other party has served the respective declaration of disclosure on the noncomplying party, the complying party may, within a reasonable time, request preparation of the appropriate declaration of disclosure or further particularity."

Wannee does not address these statutory provisions and instead relies on *In re Marriage of Brewer & Federici* (2001) 93 Cal.App.4th 1334 (*Brewer*), which was decided under section 2122, subdivision (e), rather than subdivision (f), which she raises on appeal. *Brewer* affirmed the family court's ruling setting aside the parties' judgment and marital settlement agreement where the wife's initial disclosures did not include the

18

value of her pension, understated the value of her second workplace retirement account, and led her husband to believe there was only one workplace retirement plan, rather than two. (See *Brewer,* at p. 1347.) By contrast, here there was evidence that Wannee knew of both of Tony's accounts, both were listed in his disclosures, and although the values were not listed, section 2104, subdivision (c), did not require listing of valuation. But even if valuation were required, Wannee could have asked Tony for more particularity under section 2107, subdivision (a), but she did not do so presumably because there was evidence Wannee took Tony's retirement statements when she moved out. In all events, "we do not substitute our judgment for that of the trial court, and we will disturb the trial court's decision only if no judge could have reasonably made the challenged decision." (*In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1046-1047; accord, *In re Marriage of Chandler* (1997) 60 Cal.App.4th 124, 128.) Here, we cannot say no judge could have reasonably refused to set aside the judgment based on the record before us.

b. *Duress*

As to duress (§ 2122, subd. (c)), Wannee argues that Tony was controlling and abusive during their marriage, that he surveilled her and restricted her purchases, that she contemplated suicide due to the strain of their marriage, and that she had less than two hours to review the marital settlement agreement. Duress ""may be exercised by threats, importunity or any species of mental coercion [citations] . . . .'" [Citation.] It is shown where a party intentionally used threats or pressure to induce action or nonaction to the other party's detriment. [Citations.]" The coercion must induce the assent of the coerced

19

party, who has no reasonable alternative to succumbing.'" (*In re Marriage of Balcof* (2006)141 Cal.App.4th 1509, 1523.) But Tony's testimony, which we must credit on appeal, refuted her allegations of his behavior during their marriage. Further, Tony testified that the parties had discussed the terms of the agreement for several months, there were text messages before the court that Wannee proposed a $10,000 settlement, and that she was eager to sign the divorce papers quickly. By contrast, the family court found that Wannee was not credible and changed her story about when and where she signed the marital settlement agreement. Based on all this evidence, the family court did not abuse its discretion in concluding that Wannee did not prove Tony's actions placed her under duress.

c.    *Mistake*

As to mistake (§ 2122, subd. (e)), Wannee argues she did not understand the agreement, the implication of its terms and waivers before signing it, and that she did not discover her mistake until June 2020 when Tony cut off her financial support and health insurance. Wannee testified she did not read the marital settlement agreement before signing it, and relied on Tony's representations that he would take care of her after the divorce.

Although the court has discretion to set aside a judgment of dissolution based on unilateral mistake, the moving party bears the burden of establishing the existence of a mistake. (See *In re Marriage of Rosevear* (1998) 65 Cal.App.4th 673, 685 [family court did not abuse its discretion by refusing to set aside judgment on basis of wife's purported unilateral mistake as to the marital settlement, where record also contained "evidence

20

contradicting any inference of possible mistake on her part about the terms of the stipulation"].)  Again, the family court determined that Wannee was not credible and that she was a "sophisticated business woman," who regularly dealt with contracts.  As we must, on appeal we credit the evidence before the family court that:  the parties had discussed the terms of the settlement for a few months; text messages and Tony's testimony indicated Wannee proposed the $10,000 amount and that he could cut off her insurance; Wannee understood written English; and Wannee had time to review the agreement privately before she and Tony signed the documents with the notary.  The family court did not abuse its discretion in concluding Wannee did not prove she made a mistake of fact or law that justified setting aside the judgment.

Further, to the extent Wannee challenges the judgment entered on the marital settlement agreement because she received less than what she believed she was entitled to, Wannee does not address the impact of section 2123 in any of her appellate briefs.  (See § 2123 ["a judgment may not be set aside simply because the court finds that it was inequitable when made"].)[10]

---

[10]     Wannee argues for the first time on reply that the family court should have presumed Tony exerted undue influence on her based on how advantageous the marital settlement agreement was to Tony.  "We do not consider arguments raised for the first time in a reply brief."  (*Committee to Relocate Marilyn v. City of Palm Springs* (2023) 88 Cal.App.5th 607, 636, fn. 8.)  We decline to consider the attorney declaration attached to her reply brief purporting to explain why this argument was not presented in the opening brief.

> d. *Wannee forfeited her challenge to the enforceability of the premarital settlement agreement*

Wannee also argues the premarital settlement agreement is unenforceable. Wannee has forfeited this argument. Although she made a conclusory argument about the premarital agreement in her opening brief, she did not cite any legal authority in support and only presented a developed argument for the first time in her reply brief. (See *Committee to Relocate Marilyn v. City of Palm Springs* (2023) 88 Cal.App.5th 607, 636, fn. 8; *Los Angeles Unified School District v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 497 [""to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record""; "failure to supply record citations or a fully developed argument" forfeits claim of error]; *Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277 [courts may disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants court to adopt]; see also *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 158 ["We will not ordinarily consider issues raised for the first time in a reply brief. [Citation.] . . . Fairness militates against allowing an appellant to raise an issue for the first time in a reply brief because consideration of the issue deprives the respondent of the opportunity to counter the appellant by raising opposing arguments about the new issue.""].)

## DISPOSITION

The order denying the request to set aside the judgment of dissolution is affirmed.  Tony is to recover his costs on appeal.

MARTINEZ, P. J.

We concur:

SEGAL, J.

STONE, J.