[L.A. No. 31029. Mar. 14, 1979.]

In re the Marriage of VERA SNOW and JOHN JAMES CONNOLLY.
VERA SNOW CONNOLLY, Appellant, v.
JOHN JAMES CONNOLLY, Respondent.

## COUNSEL

Milo V. Olson for Appellant.

Irell & Manella, Edmund M. Kaufman, Peter J. Gregora, Gregory R. Smith and Robert L. Winslow for Respondent.

## OPINION

RICHARDSON, J.—This case involves a contested marital dissolution proceeding in which, after trial, corporate stock conceded to be community property was awarded to husband, a director of the corporation. The issue presented is whether husband had a fiduciary obligation to inform wife of facts which might affect the stock's value even though such information was readily ascertainable by wife or her counsel upon reasonable inquiry. We conclude that under the circumstances of this case husband had no such duty.

Wife and husband were married April 16, 1961, in Los Angeles and they have three minor children. The couple separated July 29, 1973. In August 1973 wife filed a marital dissolution action against husband. The relationship of the parties thereafter was adversary and we recite the ensuing significant chronology.

After two years and nine months of fruitless pretrial discovery and negotiation between the parties and counsel, trial on the disposition of the community property was conducted from May 17 to 20, 1976. Consistent with Civil Code section 4800, the parties agreed that all securities owned by the community were to be valued as of May 17, 1976, for purposes of division.

One of the securities was 10,000 shares of the common stock of Amdahl Corporation (Amdahl), a computer company. Husband had become an "outside" director of Amdahl in 1972 and had been permitted to purchase these shares at 6 cents a share. Although at the time of trial the stock was not publicly traded, in 1973 Amdahl had unsuccessfully attempted a public offering of its stock. A second attempt in 1974 was also frustrated. In November 1975, seven months prior to trial, Amdahl publicly announced a third attempt at a public offering. An article in the November 3, 1975, issue of Electronic News under the headline *Amdahl Weighs Public Offering* indicated that "Amdahl hopes to make a stab at going public possibly early next year." A similar article in the March 8, 1976, issue of Business Week stated that "Amdahl Corp., another private computer company rumored to be going public soon, is also highly regarded by Wall Street analysts. The company has not yet turned a profit, but Hochfeld wouldn't be surprised if it earned $10 million in 1976." Each of three short articles in Investment Dealers Digest, dated April 20, 1976, April 27, 1976, and May 4, 1976, reported Amdahl's intended public sale.

At trial the court was obliged to set a value on the Amdahl stock and husband was questioned by court and counsel regarding this matter. However, he was neither asked about, nor volunteered, his views as to Amdahl's financial condition or future, including any prospective public issue of Amdahl stock. He testified accurately that recent private sales of Amdahl shares had been in the range of $5 to $10 per share and that the company itself had set a value of not more than $10 per share on the stock for the purpose of stock option plans for employees and directors. Husband requested that the 10,000 shares be awarded to him in the division of the community property in order to preserve his influence as a director.

On June 7, wife filed with the trial court a written "Petitioner's Closing Arguments," in which she valued the stock at "$100,000(?)" and suggested that it be awarded to husband. The June 14 issue of the Wall Street Journal contained an article on Amdahl which began, "Amdahl Corp., a Sunnyvale, Calif., maker of large computers, plans to go public with an initial offering of one million common shares." The court issued its original memorandum of intended decision June 29 indicating that it proposed to award the Amdahl stock to husband and to require him to execute and deliver an unsecured promissory note to wife for half the value of the stock, without designating the principal amount of the note. On July 7, after a meeting with counsel in chambers, the court filed its

amended memorandum which again awarded the Amdahl stock to husband but which increased spousal support to wife.

In implementation of the court's memorandum, the interlocutory judgment of dissolution of marriage was entered July 19, 1976, without objection by wife or her counsel. Under the terms of the decree the 10,000 Amdahl shares, valued at $7.50 per share, were awarded to husband. In consideration for the award of the shares (and to otherwise equalize division of the community property) the note, bearing a principal sum of $37,500, was payable in 11 annual installments with interest at 7 percent. The judgment reflected that both parties had waived findings of fact, the right to appeal, and the right to move for a new trial. A final judgment of dissolution of marriage was entered on July 20.

In the early part of August the status of the public offering of Amdahl stock remained uncertain. An article in the August 6, 1976, issue of the Wall Street Journal, headlined *Amdahl Stock Issue Runs Into Trouble; Release is Delayed,* reported that the Securities and Exchange Commission had challenged a portion of Amdahl's financial statement. The article continued, "Yesterday morning, before the problems developed, First Boston [managing underwriter for the proposed issue] indicated the Amdahl issue would be priced at $30 a share, at the low end of the $30 to $35 range originally estimated." On August 12, 1976, the public offering was finally made and 1,062,500 shares of Amdahl stock were sold, representing 1 million shares held by the company and 62,500 shares owned by shareholders (not including husband). The opening price of the stock was $27.50 a share, translated into a value for 10,000 shares as of the date of the offering, of $275,000. (Since then the stock again has substantially increased in value.)

On January 12, 1977, wife filed a motion pursuant to Code of Civil Procedure section 473 seeking to reopen the interlocutory and final judgments of dissolution alleging fraud on the part of husband in failing to reveal voluntarily that Amdahl contemplated a public offering. Section 473 provides in relevant part that "The court may, upon such terms as may be just, relieve a party or his legal representative from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect." ■ Relief under this section is authorized where there is proof of fraud which results in excusable neglect or mistake. (*Kulchar* v. *Kulchar* (1969) 1 Cal.3d 467 [82 Cal.Rptr. 489, 462 P.2d 17, 39 A.L.R.3d 1368]; *In re Marriage of Carletti* (1975) 53 Cal.App.3d 989 [126 Cal.Rptr. 1]; see 5 Witkin, Cal. Procedure (2d ed. 1971) Attack on Judgment in Trial Court, §§ 126, 130.)

As part of her section 473 motion, wife requested one-half of the Amdahl stock. She alleged that husband owed her a fiduciary duty, as an Amdahl director, to disclose to her the proposed public sale of Amdahl stock and, further, that his failure to do so constituted a violation of Corporations Code section 25402 which in pertinent part reads: "It is unlawful for an issuer or any person who is . . . [a] director . . . whose relationship to the issuer gives him access, directly or indirectly, to material information about the issuer not generally available to the public, to purchase . . . any security of the issuer in this state at a time when he knows material information about the issuer gained from such relationship which would significantly affect the market price of that security and which is not generally available to the public, and which he knows is not intended to be so available, unless he has reason to believe that the person selling to or buying from him is also in possession of the information."

More specifically alleging fraud, wife contended that husband knew at the time of trial that the Amdahl stock would be the subject of a public offering at a price of $25 to $30 a share, that he knowingly withheld such information from her permitting him to acquire her community interest in their shares at the price of $7.50 a share, and that she discovered the alleged fraud only when the announcement of public sale was made. Wife further asserted that had she and her counsel known of the impending public offering, they would have insisted that the Amdahl shares be divided equally.

On March 15, 1977, the trial court denied wife's motion to vacate the judgment on two grounds, after concluding that she had not established any basis for section 473 relief. The court determined, first, that there was no evidence that in his capacity as a corporate director husband had obtained or withheld information "not generally available to the public." The court concluded that the information regarding the proposed Amdahl public offering was neither confidential nor secret, had been published prior to trial, was reasonably available to wife and her counsel, and would have come to her knowledge, if in fact it did not, had she made even a most cursory examination of the financial background of the stock. Second, the court found that the value of the Amdahl stock on May 17, 1976, the stipulated valuation date, was reasonably determined to be $7.50, and that there was no substantial evidence otherwise.

In reviewing the evidence in support of a section 473 motion, we extend all legitimate and reasonable inferences to uphold the judgment. The disposition of such a motion rests largely in the discretion of the trial

court, and its decision will not be disturbed on appeal unless there has been a clear abuse of discretion. Although precise definition is difficult, it is generally accepted that the appropriate test of abuse of discretion is whether or not the trial court exceeded the bounds of reason, all of the circumstances before it being considered. (*In re Marriage of Carter* (1971) 19 Cal.App.3d 479, 494 [97 Cal.Rptr. 274]; *Troxell* v. *Troxell* (1965) 237 Cal.App.2d 147, 152 [46 Cal.Rptr. 723].) We have said that when two or more inferences can reasonably be deduced from the facts, a reviewing court lacks power to substitute its deductions for those of the trial court. (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480]; *Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183].)

▇ Applying the foregoing well established standards, we conclude that the determination of the trial court was supported by substantial evidence. The information which husband possessed regarding the proposed public offering was generally available to the public. The court had before it numerous news articles which had been published before trial which discussed the public offering. While some of these reports, perhaps, may have had limited circulation, an article published in the Wall Street Journal on June 14, 1976, during the period in which counsel and the court were negotiating a final settlement, even described the number of shares to be sold, and although wife's counsel admitted that at the time of trial he had heard "vague rumors" of a public offering, no further information was sought. Not only would the information about the public offering have been readily available to wife or her counsel had they read the financial papers, but even a cursory examination of the background of the stock would have revealed such information to them. Further, husband testified in his opposition to wife's section 473 motion that he had on occasion mentioned the proposed public sale to wife.

The value of the Amdahl stock was in issue at trial, and the court found it necessary to take evidence on the matter. It would not have been an unreasonable burden or difficult for wife or her counsel to have presented independent evidence at trial regarding the value of the stock through the testimony of a stock broker, a securities analyst, an accountant, banker or a fiscal officer of Amdahl. At trial, husband could have been cross-examined on the point.

The burden of discovery in a matter such as that before us does not seem onerous, and we note two recent analogous situations. In *In re Marriage of Carter, supra,* 19 Cal.App.3d 479, at page 491 (in connection with a stipulated division of community property) wife contended that

husband had concealed the value of certain community property assets including the husband's wholly owned corporation. The court, in rejecting wife's section 473 motion, noted that husband had not concealed the existence of any assets and that "[wife's] complaint that she was not informed of the market value of the several items does not constitute concealment . . . . As to items not reflected at market value, most of the stocks and bonds were the separate property of the husband. With respect to the remaining bonds, it would appear that an examination of the stocks and bonds listed in the Wall Street Journal would have reflected current fair market value . . . . Similarly, investigation could have revealed the fair market value of the husband's corporations."

In *Boeseke* v. *Boeseke* (1974) 10 Cal.3d 844 [112 Cal.Rptr. 401, 519 P.2d 161], husband failed to disclose all the facts in his possession relating to the value, nature and extent of the community property, but did give to wife and her counsel the property descriptions. Wife executed a property agreement without making her own independent investigation of the value of the property and later, after husband's death, attempted to rescind the agreement. In a unanimous opinion we held that there had been no fraud on the part of husband. We observed: "It is true [husband] did not disclose all facts in his possession relating to the value, nature, and extent of the community property. However, [wife] and her counsel were fully advised of the property descriptions. They were also aware that some of the property was of substantial value, that there was substantial income—and substantial debt. As far as can be determined, neither she nor her counsel requested further *facts* relating to the value, the nature, or the extent of the marital assets. And rather than seeking the facts, she chose to accept her husband's offer of settlement even after being advised by counsel that she should investigate. She may not now complain. The trial court's finding of fraud predicated on [husband's] lack of disclosure fails. . . . [¶] Finally, during negotiation to settle marital property rights, fairness dictates the managing spouse be under no duty to *evaluate* the marital assets. And if the managing spouse does assert an opinion of value, he or she must be able to do so without warranty. Valuation, like designation of property as being either community or separate, is an issue on which reasonable views often differ, and in the absence of concealment of assets—or facts materially affecting their value—a property settlement agreement may not later be set aside solely on the basis of the managing spouse's inaccurate opinion of value or on his or her refusal to have rendered such opinion." (Italics in original, at pp. 849-850.)

A similar situation is herein presented. Substantial evidence supports the trial court's conclusion that husband did not conceal material facts

from wife. She had every opportunity to ascertain the complete status of the Amdahl stock. She made a tactical decision not to pursue further investigation. Husband made no attempt to hinder such an inquiry and while on the witness stand during trial was readily available to answer any and all questions put to him. The record does not disclose that he answered the questions that were put to him untruthfully. Given the evidence it had before it, the trial court did not abuse its discretion in determining that husband had not breached his general fiduciary duty as a director by omissions in his testimony.

■ The trial court also found that $7.50 was a reasonable price for the stock as of May 17, 1976, the date agreed upon for valuation. The record reflects abundant evidence to support this determination. During the period, March to May 1976, more than 25,000 shares of Amdahl stock had been traded in more than a dozen different transactions between parties fully cognizant of the prospective public sale, at prices ranging from $5 to $10 per share. On May 17, 1976, the company's board of directors unanimously adopted a resolution valuing the company's common stock at *not more than* $10 per share for purposes of stock options. The directors of the company clearly would have been aware of the intended offering. At the time of trial Amdahl had never shown a profit. Given the information that it had, the court could reasonably determine that $7.50 per share, the middle of the $5 to $10 per share range which had been established by the evidence, was the fair value of the stock.

■ Wife further contends that husband owed her a separate fiduciary duty arising from the marital relationship. We are unable to accept the argument. From the time that wife filed her petition seeking dissolution of the marriage in 1973 her relationship with her husband was an adversary one. Any obligation of trust between them was terminated. They were locked in litigation. They maintained separate residences. Each was represented by his or her own counsel. They pursued their individual and separate legal interests with enthusiasm. The trial court characterized the case as "an extremely well tried case with high but controlled emotions and a difficult legal problem."

We have repeatedly held that parties may elect to deal with each other at arms' length, and when they do so any fiduciary obligation otherwise owing is thereby terminated. (*Boeseke* v. *Boeseke, supra,* 10 Cal.3d 844, 849; *Collins* v. *Collins* (1957) 48 Cal.2d 325, 330-331 [309 P.2d 420]; *Jorgensen* v. *Jorgensen* (1948) 32 Cal.2d 13, 23 [193 P.2d 728]; see also *In re Marriage of Carter, supra,* 19 Cal.App.3d 479, 491.) The actions of the

parties in the present case establish that husband and wife chose to deal with each other as legal adversaries and that at all times during the negotiations relative to the Amdahl stock wife never relied on any relationship of confidentiality or mutual trust.

Our holding in *Vai* v. *Bank of America* (1961) 56 Cal.2d 329 [15 Cal.Rptr. 71, 364 P.2d 247], is not contrary. In *Vai* wife sued for separate maintenance, but discontinued the adversary proceeding at the request of husband who told her that she would not have to pursue her legal remedies in order to obtain a reasonable division of property. He represented to her that she would be supplied with full and complete information about the community property and that he would negotiate a fair and equitable property settlement agreement. On the basis of these statements the wife made no further independent investigation of the value of the community property, and executed the agreement. Husband died and, upon learning of what she believed to be gross inequities in the values of the community property received by each of the parties, wife sued to rescind the agreement on the basis of fraud.

We held in *Vai* that the facts as found by the trial court showed the existence of a fiduciary relationship and constructive fraud as a matter of law. "There is no evidence in the record that [wife] actually knew of the fraud before the death of her husband. However, 'discovery is different from knowledge, [so] that where a party defrauded has received information of facts which should put him upon inquiry, and the inquiry if made would disclose the fraud, he will be charged with a discovery as of the time the inquiry would have given him knowledge.' [Citation omitted.] 'The circumstances must be such that the inquiry becomes a duty, and the failure to make it a negligent omission.' [Citation omitted.] Where no duty is imposed by law upon a person to make inquiry, and where under the circumstances "a prudent man" would not be put upon inquiry, the mere fact that means of knowledge are open to a plaintiff, and he has not availed himself of them, does not debar him from relief when thereafter he shall make actual discovery.' [Citation omitted.]" (P. 343.) Since the wife in *Vai* had been reasonably led by the affirmative actions of her husband to rely on him, under the circumstances she was not "put on inquiry."

The present case differs. Here, after the dissolution action was filed, wife was never led to believe that she could or should rely on husband. The dispute over the property lasted almost three years, during which time wife and her counsel pursued their own independent investigation of the community property, at least to the extent of submitting a proposed

property division. The value of the Amdahl stock was far from certain. In her pleadings dated June 7, 1976, wife speculated that the Amdahl stock was worth "$100,000(?)." Parties in a civil adversary proceeding who bear no special relationship to each other bear the responsibility of using those reasonable means available to develop and ascertain factual information affecting their interests in the litigation. Wife had the means to do so, including the cross-examination of husband at trial. If she and her counsel chose not to investigate and were, as she alleges, ignorant of the proposed public offering, they may not be heard to complain if they fail to utilize those reasonable means of discovery readily at hand. As we observed in *Vai,* "Of course, as was the case in *Collins* v. *Collins* [*supra*], 48 Cal.2d 325, the wife may choose not to rely on her husband and release him from the performance of his fiduciary duties." (56 Cal.2d at p. 337.) We are satisfied that this is what happened in the present case.

 In further support of her application for section 473 relief, wife, through other counsel on appeal, now contends that Civil Code section 4800 mandated an equal division in kind of the Amdahl stock and that it was a "mistake of law" for the trial court, counsel, and parties to believe that the stock could all be awarded to husband.

Civil Code section 4800, subdivision (a), provides in relevant part that "the court shall . . . if it expressly reserves jurisdiction to make such a property division, divide the community property . . . of the parties, . . . equally. [¶] (b) . . . (1) Where economic circumstances warrant, the court may award any asset to one party on such conditions as [the court] deems proper to effect a substantially equal division of the property."

In urging her interpretation of section 4800 wife places considerable reliance on *In re Marriage of Brigden* (1978) 80 Cal.App.3d 380 [145 Cal.Rptr. 716]. There, in a dissolution of marriage proceeding it was held to be reversible error for the trial court, where wife had specifically requested an equal division, to award the husband as his separate property all of the community-owned stock in a publicly held corporation, subject to conditions that the husband must either purchase the shares representing the wife's interest or release them to her pursuant to a decreed schedule. The *Brigden* court found the trial court judgment inequitable in terms of the financial position in which it placed the parties, the security they were given, and their tax consequences.

*Brigden,* however, is clearly distinguishable on its unique facts and should not be construed as uniformly applicable to all divisions of community-held stock. Unlike the wife in *Brigden,* plaintiff wife here did

not request award of the stock either partially or in toto. Even if she believed, as she alleges, that she was not entitled to request an equal division of the stock, she could have requested that the entire stock be awarded to her. This she did not do. On the contrary, as noted above, with the advice of her own counsel, she suggested that it be awarded to husband.

In *Brigden,* the wife received no immediate financial compensation for her share of the community-held stock. In the present case wife received a promissory note for what then appeared to be the reasonable value of the stock as determined by the trial court and fixed as of the date which was stipulated by the parties. Regardless of any subsequent fluctuations in the stock value, up or down, wife would be entitled to the fixed sum due under the note.

■ Contrary to wife's assertions, Civil Code section 4800 was intended to, and does, vest in the court considerable discretion in the division of community property in order to assure that an equitable settlement is reached. In particular cases, strict "in kind" divisions, such as wife now urges, may cause, rather than avoid, financial inequalities. A spouse with a high income may be able to afford to retain high-risk assets while an unemployed spouse wholly dependent upon spousal support may not. By dividing "in kind" high-risk assets such as the Amdahl stock, a court may, for purposes of fairness, divide the risk of loss disproportionately. The exercise of a trial court's sound discretion is best preserved by maintaining a maximum degree of allowable flexibility.

■ The record clearly establishes the volatile nature of the Amdahl stock. The prospectus for the stock, dated August 12, 1976, states "The Common Stock offered hereby involves a high degree of risk. Prospective investors should consider carefully the risk factors indicated under 'Introduction Statement-Risk Factors.'" The prospectus added that "the Company has never paid dividends on its Common Stock and presently plans to continue this policy in order to retain its earnings, if any, to finance the development of its business."

This uncertain, nonincome-producing stock might be a valuable holding for an individual who was otherwise financially secure, but a court or counsel might well conclude that a less-risky, more assured income-producing investment such as an interest-bearing note with a fixed principal would more appropriately serve an unemployed woman with custody of two minor children.

From the financial status of Amdahl at the time of the trial and the interlocutory decree, a person evaluating Amdahl shares might reasonably conclude that if a public offering did not rescue Amdahl from its extreme deficit position, both in net worth and in current assets, the corporation could well face bankruptcy making the stock wholly worthless. The fact that later events included a successful public offering which resulted in a financial bonanza must not divert us from our conclusion that at the time the trial court, counsel, and the parties made and accepted the property division before us its essential terms were fair and reasonable.

The trial court could properly infer that wife's trial counsel had complied with his obligations in advising her to seek a more secure asset. From that inference the trial court could well conclude that wife's decision to take the note instead of the stock was a knowing tactical decision rather than the product of fraud or mistake of law.

The order denying wife's motion to vacate the judgment of dissolution is affirmed.

Bird, C. J., Tobriner, J., Mosk, J., Clark, J., Manuel, J., and Newman, J., concurred.

Appellant's petition for a rehearing was denied April 12, 1979.