Filed 4/17/14  In re Madison T. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re MADISON T., a Person Coming Under the Juvenile Court Law. | D064709 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. CJ001094) |
| v. | |
| KELLY S., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Ronald F. Frazier, Judge.  Affirmed.

Neil R. Trop, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, Patrice Plattner-Grainger, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Minor.

Kelly S. appeals an order denying her Welfare and Institutions Code[1] section 388 petition for modification seeking placement of her daughter, Madison S., with nonrelative extended family members.  Kelly contends the court abused its discretion in finding that she did not show it was in Madison's best interests to be placed with the nonrelative extended family members.  We affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

In September 2012, Madison became a dependent of the juvenile court under section 300, subdivision (b), and was removed from her parents' custody pursuant to section 361, subdivision (c)(1).[2]  The court placed Madison in licensed foster care and ordered reunification services for Kelly S. (mother).

From September 2012 to March 2013, Kelly participated in case plan services.  However, in March 2013, she was discharged from the residential substance abuse treatment center for not complying with program rules.  Kelly relapsed several weeks later while awaiting acceptance into a new residential recovery program.

---

[1]     All statutory references are to the Welfare and Institutions Code.

[2]     Kelly suffered Chronic Paranoid Schizophrenia, was not under the care of a psychiatrist, had been noncompliant with her prescribed medication, and admitted smoking marijuana during her pregnancy.  At birth, Madison tested presumptively positive for marijuana and Kelly admitted smoking marijuana during pregnancy.  Nine days later, Madison stopped breathing and was admitted to the hospital for treatment.  Kelly exposed Madison to domestic violence by her boyfriend in the hospital room when Madison was receiving treatment.

In April 2013, the San Diego Health and Human Services Agency (Agency) reported its intention to evaluate the Victorville home of Madison's paternal aunt, Suzanne T., for placement. Suzanne was also caring for Madison's half sister, K. T. Kelly stated she did not want Madison placed with Suzanne because Suzanne did not have experience raising children and because Kelly worried she would be unable to visit Madison if she was placed in Victorville.

In May 2013, Kelly was admitted into a new residential substance abuse treatment center, but was discharged on the same day because she did not get along with the other residents. Three days later, the Agency conducted a Team Decision Meeting to determine Madison's placement. The Agency concluded that, in addition to Suzanne's home, it would evaluate the home of nonrelative extended family members (NREFMs) Stephano and Rosario B., where Madison's other half sibling, Kaylie, resided.

In June 2013, Kelly filed a section 388 petition to modify the court order placing Madison in licensed foster care. The petition alleged, as changed circumstances, there were concerns regarding Madison's care in the foster home, and the home of the NREFMs had subsequently been approved for Madison's placement. In addition, the petition alleged it would be in Madison's best interests to live with the NREFMs because they were prepared to meet her developmental needs and she could reside with her half sister, Kaylie.

The Agency cleared the homes of both the NREFMs and Suzanne for Madison's placement, and both families stated they would like to adopt Madison if reunification with Kelly was unsuccessful. With respect to Suzanne, the Agency was concerned about

3

Kelly's objection to placement with Suzanne and possible visitation issues because of the travel distance to Victorville. However, Suzanne stated she would provide weekly supervised visitation for the parents and they could have additional visits if they traveled to Victorville. Suzanne presented a safety plan for Madison and stated that if the parents arrived at her home unannounced, she would ask them to leave and call the police if they refused to comply.

With respect to the NREFMs, the social worker expressed concern they would not be as protective as Suzanne, be unable to set clear boundaries with the parents regarding visitation with Madison, and put Kelly's needs over Madison's. Stephano admitted he would take Kaylie downtown with him to look for the parents. In addition, there had been prior referrals between Kelly and Rosario for domestic violence and drug use, and Kelly and Stephano had filed dual restraining orders against each other in the past. When asked what he would do if Kelly arrived at the house or acted inappropriately, Stephano stated he would try to calm Kelly down, ask her to leave, and get in his car and drive off if she would not leave.

A Court Appointed Special Advocate (CASA) accompanied Madison on several visits with each family. During Madison's visit with Kelly and the NREFMs, the CASA reported the stroller and toys brought by the NREFMs were dirty and covered in grime. She also noted Rosario did not hold or talk to Madison, but rather told other people what to do with her. Further, Madison's half sister, Kaylie, was distant and not affectionate with Madison. During the visit, Kelly took Madison away from the group and forcibly picked at Madison's nose until she began crying. When Suzanne visited with Madison,

4

the CASA reported Suzanne was very affectionate with her, brought clean toys and baby equipment for her, and interacted with her throughout the entire visit. The father, Jason T., made no effort to visit Madison.

During the reunification period, Kelly refused to enter residential treatment, did not attend several scheduled visits, and arrived at one visit with visible marks on her body that she alleged occurred when Jason's girlfriend beat her up. Kelly expressed to the social worker that she did not want to reunify with Madison and wanted the NREFMs to adopt her. The Agency recommended reunification services be terminated for both parents and Madison be placed with Suzanne.

On July 30, 2013, the court held an evidentiary hearing on Kelly's section 388 petition. After considering the evidence and arguments of counsel, the court denied Kelly's section 388 petition. The court found a change of circumstances existed, but Kelly did not meet her burden of proof in showing placement with the NREFMs was in Madison's best interests. The court ordered placement of Madison with Suzanne, terminated reunification services for both parents, and scheduled a hearing under section 366.26 to select and implement a permanent plan for Madison.

DISCUSSION

A. *Standard of Review*

We review the grant or denial of a petition for modification under section 388 for abuse of discretion. (*In re Shirley K.* (2006) 140 Cal.App.4th 65, 71; *In re Casey D.* (1999) 70 Cal.App.4th 38, 47.) To modify an existing court order, the petitioner must show, by a preponderance of the evidence: (1) there is a change of circumstances or new

5

evidence; and (2) the modification will promote the child's best interests. (§ 388; Cal. Rules of Court, rule 5.570(e)(1); *In re Justice P.* (2004) 123 Cal.App.4th 181, 188-189; *In re Michael B.* (1992) 8 Cal.App.4th 1698, 1703.) The primary goal in determining the child's best interests is to assure stability and continuity for the child. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) The denial of a section 388 motion rarely merits reversal as an abuse of discretion. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 522.)

B. *Analysis*

Kelly contends the court abused its discretion by denying her section 388 petition to modify the existing court order and place Madison in the home of the NREFMs. She contends evidence showed the proposed modification was in Madison's best interests because it would allow her to reside with her half sister Kaylie, stay connected with her extended family, and maintain her family identity.

Kelly contends the social worker was unable to articulate any legitimate reason for her concerns about placement with the NREFMs. This contention is unpersuasive. At the hearing, the social worker specifically testified as to her concerns about placing Madison with the NREFMs. She testified the NREFMs were not able to set clear boundaries with Kelly and went out of their way to help the parents despite Kelly's refusal to attend substance abuse treatment and her cancellation of visits. The social worker expressed her concern the NREFMs would put the parents' needs before Madison's, as evidenced by their poor judgment in taking Kaylie downtown to search for Madison's homeless father *after* suspecting he had broken a window at their home. In addition, the social worker testified she was concerned the NREFMs would take Madison

6

downtown with them, allow Madison to have unsupervised contact with Kelly, and would be unable to safely take Madison from her parents if they attempted to take her.

The social worker further testified Suzanne was the preferred placement for Madison because she appeared more protective of Madison, was willing to draw strict boundaries with the parents, and could remove Madison from dangerous situations. The record also shows Suzanne presented a safety plan and visitation schedule for Madison and her parents, evidenced her willingness to remove Madison from any situation *if* the parents appeared intoxicated, and said she would immediately call the police if Madison's parents showed up to her home unannounced. Moreover, in her report, the CASA observed that, unlike the NREFMs, Suzanne brought clean baby equipment and toys for Madison and interacted with her throughout the entire visit. Considering all observations and factors presented, the social worker testified placement with Suzanne was in Madison's best interests.

Kelly further contends the presence of Kaylie with the NREFMs is a pivotal factor separating their home from Suzanne's home. Although placement with siblings in the same home is one factor considered by the court, the court must consider all factors to determine the best interests of the child. (§ 361.3, subd. (a).) As previously noted, several factors led the social worker to determine it would be in Madison's best interests to be placed with Suzanne. Although Kelly contends Madison and Kaylie have cultivated a relationship through weekly visits during the course of the dependency, the CASA reported Kaylie appeared unaffectionate and distant from Madison. In addition, Kelly disregards the presence of Madison's other half sister, K., in Suzanne's home.

7

The court is bound to consider all of the circumstances before it in rendering a judgment or order. (*In re Marriage of Connolly* (1979) 23 Cal.3d 590, 598.) Based on the evidence presented, the social worker's testimony, and counsel's arguments, we conclude the court properly considered all of the relevant factors in determining it was in Madison's best interests to be placed with Suzanne. We also conclude the court did not abuse its discretion in finding Kelly did not meet her burden to prove placement with the NREFMs, rather than Suzanne, was in Madison's best interests.

Kelly next contends the relative preference provisions of section 361.3 are not applicable in this case. She argues relative placement is only mandated on the initial removal from parental custody at the dispositional hearing or at a later stage of the dependency action when a new placement *must* be made. (§ 361.3, subd. (d).) However, the relative status of Suzanne under section 361.3 is not at issue in this case. Although the court gives relatives preferential treatment in the placement of a dependent child, the court must consider all factors enumerated in section 361.3, subdivision (a), to determine the best interests of the child. As previously noted, the court considered all of the evidence and testimony presented at the evidentiary hearing before deciding to place Madison with Suzanne, a decision we conclude was a proper exercise of its discretion.

Finally, Kelly contends, and the Agency concedes, the statutory requirement that review of an order made pursuant to section 366.26 is sought by petition for extraordinary writ is not applicable in this case. The statute provides that if a party is present when the order is made, the court *shall* orally advise the party of the requirement to file a petition for extraordinary writ review within seven days. (§ 366.26, subd.

8

(*l*)(3)(A); Cal. Rules of Court, rule 8.450 (e)(4)(C).)  Here, the court did not advise Kelly of the writ requirement if she wished to challenge any of the court's findings or orders. Therefore, the Agency and Kelly agree Kelly has properly sought review in this case by way of appeal.

DISPOSITION

The order is affirmed.


                                                                    McDONALD, J.

WE CONCUR:


McCONNELL, P. J.


McINTYRE, J.