Filed 2/11/26  Marriage of Pham CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re the Marriage of KENNY and KATHERINE PHAM. | |
| KENNY TRAC,<br><br>    Appellant,<br><br>              v.<br><br>KATHERINE PHAM,<br><br>    Respondent. | G064451<br><br>(Super. Ct. No. 16D008592)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Michele Bell, Judge. Affirmed in part, reversed in part, and remanded. Motion to strike granted.

Law Offices of Lisa R. McCall, Lisa R. McCall and Erica M. Barbero for Appellant.

Katherine D. Pham, in pro. per., for Respondent.

\*       \*       \*

Appellant Kenny Trac appeals from the judgment in this marital dissolution case. Before trial, both parties claimed their date of marriage was January 6, 2009, with a duration of seven years and eight months, which constitutes a short-term marriage under California law. During the trial, however, respondent Katherine Pham testified that their actual date of marriage was December 27, 2004. The trial court made multiple credibility findings against Kenny[1] and ultimately determined the date of marriage was December 27, 2004, thereby finding it was a long-term marriage.

Based on the trial court's finding as to the date of marriage, it also found that Kenny breached his fiduciary duty to Katherine when he failed to disclose to her all the facts concerning transactions regarding certain real property during their marriage. As a remedy for the breach, the court ordered Kenny to pay a "punitive damage award of one half the equity" in the property to Katherine. Finally, the court ordered spousal support commensurate with a long-term marriage.

Kenny contends that the trial court erred in relying on Katherine's testimony and that the date of marriage finding lacked evidentiary support. He also contends that he did not breach his fiduciary duty to Katherine because the property in question was his separate property, and the court erred in awarding punitive damages. Finally, he argues that Katherine is not entitled to nonterminating spousal support because the date of marriage finding is improper, and the parties did not have a long-term marriage.

---

[1] As is typical in family law matters, we refer to the parties by their first names for clarity and ease of reference, not out of familiarity. (See *In re Marriage of Lietz* (2024) 99 Cal.App.5th 664, 667, fn.1.)

We find that the 2004 date of marriage finding was proper under the substantial evidence standard. Based on that date, the parties had a long-term marriage, and the award of nonterminating spousal support was proper as well. With regard to the contested real property, Kenny is correct that entering a "punitive damage award" was inconsistent with the relevant law. We reverse only that part of the judgment and remand the matter for further consideration and appropriate orders.

## STATEMENT OF FACTS

In October 2016, Kenny petitioned for dissolution of his marriage to Katherine. He declared their date of marriage was January 6, 2009 and their date of separation was September 26, 2016. Katherine responded, stating the date of marriage was January 6, 2009 and date of separation was October 4, 2016. Both parties originally claimed that the duration of the marriage was seven years and eight months. The parties had one minor child, Kevin, born on October 22, 2005.

Both parties requested division of property. Kenny claimed the real property at 11742 Gilbert Street, Garden Grove (the Gilbert property) was his separate property. Katherine requested the court reserve the issue of spousal support payable to her for future determination.

The case came on for trial in August 2023 and was heard over three days. Both parties appeared and were assisted by Vietnamese language interpreters. Only Kenny was represented by counsel. Katherine was self-represented.

At the start of the proceedings, the court found that Katherine had failed to comply with its standing orders to provide an exhibit binder and had not provided Kenny's counsel with advance notice of any documents she intended to use in the proceedings. Katherine therefore was prevented from

3

admitting into evidence any of the documents she had brought with her to court.

On direct examination, Kenny testified he was 69 years old, he lived at the Gilbert property, and he had previously been married. Following the dissolution of his first marriage, Kenny stated he married Katherine in January 2009 in Vietnam. The court received in evidence, without objection, a translated marriage certificate between Kenny and Katherine, showing a marriage date of January 6, 2009.

Kenny testified about his purchase of the Gilbert property in 2000. Initially, the Gilbert property was in Kenny's younger sister's name, Nguyet Trac. In January 2006, Nguyet added Kenny's name to the deed. On March 14, 2007, she quitclaimed the property to Kenny. The three grant deeds for the Gilbert property were received by the court in evidence as exhibit No. 2. Kenny also testified he did not acquire any real property with Katherine during their marriage nor did he own any property with her.

On April 29, 2010, Kenny transferred the Gilbert property to his trust. During cross-examination, Katherine asked Kenny why he executed the deed to the trust. Kenny responded, "Because I want to do that deed so that I can leave it for my children before I die.

Thereafter, Katherine asked the court: "In 2004, we had a wedding. In 2005 we had our son together, that's Kevin . . . . And according to our tradition in Vietnam, that wedding is the official marriage of our marriage [*sic*]. And he left us . . . there until Kevin was five years old. [¶] . . . [¶] So under the eyes of America is that a marriage?"

The court responded it could not give Katherine legal advice, but asked, "[Kenny], I'm going to ask you, sir, did you get married to [Katherine] in Vietnam in 2004?" Kenny answered, "No, no." Katherine then presented

4

the court with documents, which she stated were "photos and also documents of the marriage and the air tickets that he went to Vietnam."

Kenny objected to the court taking testimony regarding the date of marriage, given the translated marriage certificate was already in evidence. The court responded, "I think she's trying to impeach his credibility. I don't know what she has, so it's kind of difficult. That's why I want her to identify the document first."

Katherine then attempted to introduce "the card from the wedding for December 27th, 2004." Noting it was only being offered for the limited purpose of impeachment and not being admitted into evidence, the court identified exhibit C as "wedding invitation." The document was in Vietnamese.

The court then asked Kenny, "So as you sit here today, this doesn't appear to be a wedding invitation that you had for services in Vietnam?" Kenny responded, "I have never seen this document before." The court inquired, "Is your name on this document, sir?" Kenny responded, "No, only the last name. [¶] . . . [¶] Trac."

Katherine continued her cross-examination of Kenny the next day. Kenny testified he had paid the mortgage on the Gilbert property in full, but took out a home equity line of credit (HELOC) against the property for $150,000 in August 2007. To pay down the HELOC, Kenny rented out rooms in the home. At the time of the hearing, the HELOC was not paid off, and Kenny was paying variable interest of $250 per month on the balance. Kenny testified that while the parties had joint accounts during marriage, he did not use the joint accounts to make payments on the HELOC. Rather the renters paid him in cash, and he took the cash to the bank every Monday to pay down the HELOC.

5

The court asked Katherine if she had obtained bank statements for the HELOC. Due to time constraints, Katherine was only able collect two years' (2014-2016) worth of bank statements. The bank statements from the parties' joint account were identified as exhibit D and received in evidence. The remaining balance on the HELOC was about $98,000, meaning that Kenny had paid down approximately $52,000 of the principal and more than $50,000 in interest.

Katherine then asked Kenny about his previous testimony that the Gilbert property was rented out for $1,200 per month. To impeach Kenny's testimony, Katherine presented a rental agreement, identified as exhibit F, showing that the monthly rental income for the Gilbert property was $1,900, not $1,200.

Following this line of questioning, Katherine asked Kenny, "Yesterday, you testified that you did not marry me on December 27th, 2004. So, who is in these pictures?" Before allowing Katherine to show the photos to Kenny and his counsel, the court asked Katherine to give an offer of proof as to what year the photos were taken in and what they show. Katherine stated the pictures were taken on the day the parties were married on December 27th, 2004—some at a hotel in the Dan Binh District in Vietnam and some at home. The December 2004 photos were marked for identification as exhibit G, but not received in evidence. The court asked, "[Kenny], are you in these photos?" He answered, "Yes." "Are they from 2004 in Vietnam?" Kenny answered, "Yes."

The court directed Katherine, "It's this court's understanding you were married in 2010 [*sic*] in the United States. That is the date the community was formed for purposes of what we're here for." The court asked her to focus her questions regarding the marital standard of living between

6

"2010 [*sic*] until . . . 2018," when Katherine alleged they separated. After allowing Katherine to ask a few more questions that were not within the desired scope, the court chose to close the first portion of Kenny's cross-examination.

Following the close, the court warned Kenny's counsel, "Now, I know what your client has said, but he has been impeached multiple times. And that is not lost on myself or I'm sure you." Additionally, the court gave Kenny's counsel an opportunity to object to the impeachment exhibits A through F. The only objection made to the impeachment exhibits was regarding exhibit C, the wedding invitation, for lack of foundation. The court sustained the objection. Exhibits A, B, D (statements from the joint account), E, and F were admitted.

The court stated its inclination was to find that the Gilbert property was Kenny's, subject to reimbursement and credits for the community contribution. Thereafter, the court stated that it "[did not] find [Kenny] to be credible."

On the next day of trial, the court began by asking Katherine questions about the marital standard of living. Katherine testified when she first moved to the United States in 2009, Kenny, Katherine, and Kevin resided in the garage of the Gilbert property to make room for renters in the main portion of the home. She described performing domestic tasks, like cooking, laundry, cleaning the home prior to new renters moving in and maintaining the backyard throughout each tenancy.

Katherine also testified to accompanying Kenny on diamond-buying trips to pawn shops in Las Vegas, Nevada. In 2009, these trips occurred once a month to every two weeks. At the time, Katherine was taking nail technician classes and she recalled having to skip class to accompany

7

him on these trips. From 2012 to 2016, Katherine took ESL classes at Santa Ana College and worked part time as a nail technician.[2]

The court then asked Katherine about her access to and knowledge about a joint Bank of America account during the course of marriage. Katherine testified she did not know how to access the account, she was unable to withdraw funds from the account on her own, and she did not have an ATM card.

The court then asked Katherine whether she had access to the information regarding the renters at the Gilbert property, such as the rental agreements or payment information. Katherine responded, "If the Court allows, I will go and meet those people and ask for their help."

Kenny's counsel declined to cross-examine Katherine to save time and for her well-being.[3] Both parties delivered brief closing arguments.

The court then delivered its oral ruling, ordering Kenny's counsel to prepare the judgment. The court found Kenny had not met his fiduciary duties with regard to disclosure of material facts during a dissolution proceeding. There had been significant testimony about rental income collected during the marriage, a joint account, and a HELOC to which Katherine did not have significant access. Katherine had been unable to

---

[2] To cover education expenses, Katherine took out a student loan for $18,000.

[3] Throughout her testimony, Katherine cried and appeared emotional. The court called a recess halfway through her testimony to provide her with some relief. Katherine testified to experiencing a health crisis and being diagnosed with severe depression and other mental health issues.

provide evidence about the impact of the HELOC on community assets because of this lack of information.

With regard to the date of marriage, the court noted it had allowed Katherine to use otherwise excluded documents for impeachment purposes. The court stated Kenny "had previously denied they were married in 2004; and upon question[ing] by the court, admitted that they were in fact married December 27, 2004."[4] The court stated, "This is very troubling to the Court."[5] The court found that Kenny was not a credible witness.

The court found "[t]here was a valid marriage in Vietnam in 2004." Kenny had "admitted they were married in 2004, making this actually a long-term marriage and not a short-term marriage." The court went on to find that "[t]his is a situation where I have a long-term marriage, as acknowledged by [Kenny], and a breach of fiduciary duty."

The court found, "[T]he multiple deed transfers, the denial of the marriage in 2004, the fact that [Kenny] filed a deed as an unmarried man when he was, in fact, married, [are] significant in regards to this breach and misrepresentation. And he did nothing to make [Katherine] aware of all the facts pertaining to what he was doing with the finances for the community. [¶] [T]his is actionable . . . [Kenny's] conduct is outrageous, and [Katherine] is entitled to this punitive damage award of one half the equity in the Gilbert

---

[4] Kenny did not admit this verbally. As the court later explained (see *post*), its findings were based on its interpretation of Kenny's body language.

[5] The court also noted Kenny's testimony had been impeached in numerous other respects, including with regard to the rent amount paid by tenants at the Gilbert property, his income prior to retirement, the amount of the monthly HELOC payments, and that he had acted as a diamond reseller.

Street house. . . . [¶] [Kenny] transferred title twice during marriage and so the Court will award one-half equity to [Kenny] and one-half equity to [Katherine]. . . . And if [Kenny] is not able to pay out [Katherine], the Court will then order that the house be sold forthwith."

The court appointed an Evidence Code section 730 evaluator to appraise the Gilbert property, ordering Kenny to pay for the entire cost of the evaluator. It set the matter for an Order to Show Cause (OSC) regarding sale of the Gilbert Property on October 18, 2023.

At the OSC hearing, Kenny advised the court the proposed judgment was rejected because a minute order had been attached to it and Katherine had not filed her final declaration of disclosure. Kenny was waiting to resubmit the judgment until Katherine's final declaration of disclosure was filed.

The court stated the judgment was insufficient because it did not address the sale of the home or how funds would be disbursed. The court asked whether the appraisal had been completed. Kenny responded he had paid for the appraisal and was awaiting the report. The court ordered Kenny to revise the judgment, ordered the appraisal report completed by October 30, 2023, and set a future hearing on an OSC regarding the judgment.

On March 6, 2024, the court conducted the OSC regarding the judgment. Kenny reported the Gilbert property had been appraised at $950,000. The court directed Kenny to facilitate a sale or buyout of the Gilbert property. The court continued the OSC regarding judgment and set an OSC regarding sanctions, "not because you're not working hard, but I just want the motivation to be there to get this done, pursuant to 177.5 of the Code of Civil Procedure, for counsel."

10

On April 25, 2024, the court held another hearing for the OSC re: Judgment and OSC re: Sanctions. Kenny appeared represented by new counsel; Katherine remained self-represented. Kenny's original counsel explained the two proposed judgments he had prepared had previously been rejected, so Kenny had retained new counsel to prepare the judgment to the court's liking. The court took OSC regarding sanctions off calendar and excused Kenny's original counsel.

The court indicated it had received a proposed judgment, which would allow Kenny 90 days to attempt to refinance the Gilbert property and to pay Katherine her one-half interest of $428,578.99, or else the property would be listed for sale immediately and Katherine would receive one half of the sale proceeds. Katherine stated she was willing to sign the judgment.

The court asked if there was anything that needed to be addressed on the record. Kenny's counsel asserted there was an issue with the date of marriage finding made by the court. The court stated, "[Kenny] later admitted that they were married in Vietnam is my independent recollection. Did you read that in the transcript?" Kenny's counsel responded, "I did not. The Court made that finding . . . the Court specifically asked [Kenny] if he recognized the photo that was taken in 2004 and he said, 'Yes, that was taken in 2004.' He did not ever at any point testify that they were actually married in 2004."

The court responded, "No, I can appreciate that, Counsel, but you didn't have the benefit of seeing the parties and their demeanor during the course of the trial, and I took that as an admission against his prior testimony that was inconsistent. I took it to be a prior inconsistent statement. So even though you can't read—and maybe I didn't correctly indicate how he appeared and how he looked down and how he appeared

11

embarrassed, given the inconsistency in what he told the Court previously, that's why I found him to be not credible."

Following this discussion, the court indicated it had Katherine's signature, and it was going to sign the judgment. The judgment was entered that day. The entry of judgment was served by the clerk by mail on April 26, 2024.

On May 10, 2024, Kenny timely moved to vacate the judgment on the grounds the court's date of marriage finding was supported by an incorrect or erroneous legal basis, not consistent with or supported by the facts, and the incorrect date of marriage finding resulted in court's erroneous breach of fiduciary duty and spousal support determinations. On June 14, 2024, Katherine untimely opposed the motion, to which Kenny objected.

The court held a hearing on July 8, 2024. New counsel for Kenny argued the motion to vacate. The court denied Katherine the opportunity to present argument based on her untimely opposition.

The court explained its reasoning based on the evidence presented during trial: "[W]hen [Katherine] approached [Kenny during cross-examination], he had already denied the marriage in Vietnam in 2004, which is referenced in the transcripts. And when [Katherine] approached him, she was crying holding up the pictures— and I remember this because it was so striking—and at that time he broke mold, looked down, and [Katherine] said, 'Are they from 2004 in Vietnam?' And [Kenny] said, 'Yes.' And it was clear that he was the man depicted in photo and she was the woman and they were wearing wedding attire. And at that moment, the Court found that [Kenny] was impeached and doubted his credibility regarding his testimony and made its record regarding the breach of fiduciary duty."

12

The court continued: "[Kenny] looked at her . . . and denied they were married in 2004 and the Court found his response of 'Yes' when [Katherine] was holding up what looked like a marital photo of them in wedding attire to be an admission, that he had misrepresented that fact. [¶] . . . [¶] . . . The Court had enough independent evidence that corroborated [Katherine's] claims that they were legally married in Vietnam. The Court had a photo of the parties in marital attire in what the Court considered to be impeachment of [Kenny]. [¶] Given the fact that the Court found that [Katherine's] testimony was more credible, persuasive, compelling and convincing, the Court found that her allegations that they were married in Vietnam were true and used that as the basis of its ruling."

Following the court's explanation of its reasoning, it denied the motion to vacate and ordered Kenny to prepare a notice of ruling or a findings and order after hearing, which was filed on August 21, 2024.

On July 24, 2024, Kenny timely noticed his appeal from the April 25, 2024 judgment.

## DISCUSSION

### I.

### APPELLANT'S MOTION TO STRIKE IS GRANTED.

In a motion to strike, Kenny argues certain attachments and statements should be stricken from Katherine's brief and not considered on appeal because they do not comply with the California Rules of Court. According to Kenny, the noncomplying attachments include a March 5, 2025 three-page letter from Katherine to this court, a Family Law notice re related case, 22 pages of photos with a purported exhibit tag, a purported wedding invitation with translation, and the parties' child's birth certificate.

13

Furthermore, he argues that statements[6] in Katherine's brief lack the necessary citations and assert factual matters not a part of the appellate record.

California Rules of Court, rule 8.204 establishes the rules for the contents and format of appellate briefs. Subdivision (d) states a party may attach copies of exhibits or other materials contained in the appellate record not in excess of 10 pages. (Cal. Rules of Court, rule 8.204, subd. (d).) Subdivision (e) provides that if a filed brief does not comply with this rule the reviewing court may order the brief returned for corrections and refiled within a specified time, strike the brief with leave to file a new brief within a specified time, or disregard the noncompliance. (Cal. Rules of Court, rule 8.204, subd. (e).)

Here, Katherine has failed to comply with California Rules of Court, rule 8.204, subdivision (d) by attaching documents not included in the appellate record and exceeding the available page limit for attachments by 26 pages. However, Katherine's violation is not substantial enough to justify striking the entire brief or dismissing the appeal. Where a Court of Appeal does not find a violation of California Rules of Court, rule 8.204 substantial enough to justify striking a brief or dismissing the appeal, a Court may decline to consider certain parts of the brief. (*Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 990 [Court of Appeal declined to consider certain parts of the appellant's opening brief for failure to provide record citations]; *Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 268 [Court of Appeal disregarded issues or contentions raised for the first time in the cross-

---

[6] Specifically, the introduction and statement of facts at pages 3 through 12 of Katherine's brief.

appellant's reply brief].) As such, the noncomplying attachments are stricken from Katherine's brief and will not be considered on appeal.

Furthermore, statements in Katherine's brief lack citation to the appellate record and legal authority. "Factual matters that are not part of the appellate record will not be considered on appeal and such matters should not be referred to in the briefs." (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 102.) Therefore, this court will disregard Katherine's factual statements and arguments in her introduction and statement of facts to the extent that they are founded on matters outside of the appellate record.

## II.

## THE COURT'S FINDING OF A 2004 MARRIAGE IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Kenny argues the trial court improperly disregarded the parties' 2009 marriage certificate and that the court's finding of a 2004 marriage date is not supported by substantial evidence.

"'When findings of fact are challenged in a civil appeal, we are bound by the familiar principle that "the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the findings below.'" (*Robertson v. Fleetwood Travel Trailers of California Inc.* (2006) 144 Cal.App.4th 785, 798.) Conflicts in the evidence are resolved in favor of the prevailing party; and all reasonable inferences must be drawn to uphold the trial court's decision. (See *In Re Marriage of Lee & Lin* (2019) 41 Cal.App.5th 698, 702; *In Re Marriage of Campi* (2013) 212 Cal.App.4th 1565, 1572; *In Re Marriage of Klug* (2005) 130 Cal.App.4th 1389, 1398.) As such, we accept "'"the evidence most favorable to the order as true and discard[s] the

15

unfavorable evidence as not having sufficient verity to be accepted by the trier of fact.""" (*Phillips v. Campbell* (2016) 2 Cal.App.5th 844, 850.)

"Substantial evidence includes circumstantial evidence and the reasonable inferences flowing therefrom." (*Conservatorship of Walker* (1989) 206 Cal.App.3d 1572, 1577; see *In Re Marriage of Fregoso & Hernandez* (2016) 5 Cal.App.5th 698, 703 [issue is not whether there is evidence in the record to support a different finding, but "'whether there is some evidence that, if believed, would support the findings of the trier of fact'"].) Furthermore, "[t]he testimony of a single credible witness may constitute substantial evidence." (*City and County of San Francisco v. Ballard* (206) 136 Cal.App.4th 381, 396.)

A party "raising a claim of insufficiency of the evidence assumes a 'daunting burden.'" (*Whiteley v. Philip Morris Inc.* (2004) 117 Cal.App.4th 635, 678.) "The substantial evidence standard of review is generally considered the most difficult standard of review to meet, as it should be, because it is not the function of the reviewing court to determine the facts." (*In re Michael G.* (2012) 203 Cal.App.4th 580, 589.) Thus, where the family court makes a fair and equitable ruling on contested factual issues, its express or implied findings are binding on appeal.

Although Katherine originally submitted the 2009 date of marriage, she later contradicted that date through her own testimony and her cross-examination of Kenny.[7] Katherine testified, "In 2004, we had a wedding. In 2005 we had our son together, that's Kevin Trac. And according

___

[7] Kenny contends that we must give "conclusive" status to the 2009 Vietnamese marriage document, citing Evidence Code sections 622 and 664, but he does not cite cases applying either section to marriage documents or explain how existing case law should be analogized in this context.

to our tradition in Vietnam, that wedding is the official marriage of our marriage."

By testifying to the 2004 marriage date, Katherine contested the validity of the 2009 marriage date and the fact finder was then free to assess the credibility of her testimony. At the hearing on the motion to vacate, the court explained, "[Katherine's] testimony was more credible, persuasive, compelling and convincing, the Court found that her allegations that they were married in Vietnam were true and used that as the basis of its ruling."

The issue here is not whether there is evidence that would support a finding preferred by Kenny; rather whether "'there is some evidence, that if believed, would support the findings of the trier of fact.'" (*In Re Marriage of Fregoso and Hernandez* (2016) 5 Cal.App.5th 698, 703.) As between the two witnesses, the court made credibility findings for each and found Katherine to be credible, whereas Kenny was not. The record is replete with the court's negative credibility findings as to Kenny throughout the trial and the court's explanations for its marriage date findings. Katherine's credible testimony is sufficient to constitute substantial evidence. (*City and County of San Francisco v. Ballard, supra,* 136 Cal.App.4th at p. 396.)

Kenny also argues the court improperly relied on a purported "admission" by Kenny that the date of marriage was December 27, 2004. Evidence Code Section 780 states that when determining the credibility of a witness the court may consider any matter that has any tendency to prove or disprove the truthfulness of his testimony at a hearing including but not limited to, his demeanor while testifying, the manner in which he testifies, his character for honesty, and previous statements.

In its explanation, the court noted, "[W]hen [Katherine] approached [Kenny], he had already denied the marriage in Vietnam in 2004

17

. . . . And when she approached him, [Katherine] was crying holding up the pictures—and I remember this because it was so striking—and at that time he broke mold, looked down, and she said, 'Are they from 2004 in Vietnam?' And he said, 'Yes.' And it was clear that he was the man depicted in [the] photo and she was the woman and they were wearing wedding attire. And at that moment, the Court found that [Kenny] was impeached and doubted his credibility regarding his testimony . . . . [¶] . . . The Court found his response . . . to be an admission, that he had misrepresented [the 2009 marriage date]" Here, the court has clearly articulated its impressions of Kenny's testimony that formed the basis, among other instances, for its credibility findings. As noted in *Meiner*, "[w]hen a trial judge gives [her] reason that [she] disbelieves a certain witness because of [his] demeanor and manner of testifying, [she] need and should not say more." (*Meiner v. Ford Motor Co.* ) (1971) 17 Cal.App.3d 127, 142.)

Nevertheless, when further pressed about its credibility findings, the court stated, "[Y]ou didn't have the benefit of seeing the parties and their demeanor during the course of the trial, and I took that as an admission against his prior testimony that was inconsistent. I took it to be a prior inconsistent statement. So even though you can't read . . . how he appeared and how he looked down and how he appeared embarrassed, given the inconsistency in what he told the Court previously, that's why I found him to be not credible." Therefore, after reviewing the court's credibility findings we find that the court was within its mandate, as the trier of fact, to find Kenny's testimony not credible.

Additionally, Kenny contends that the issue of the date of marriage is "a predominantly legal conclusion not susceptible of judicial admission as though it were a disputed fact." (*In re Marriage of V.S. & V.K.*,

18

97 Cal.App.5th 219, 221; see *In re Marriage of Elali & Marchoud* (2022) 79 Cal.App.5th 668, 681.) Both of these cases, however, addressed the issue of whether the date of marriage was subject to treatment as a judicial admission, and both courts held that it was not. The date of marriage in each case was a legal conclusion under the particular facts at issue. *Marriage of V.S. & V.K* primarily addressed how to assess the applicability of India's Hindu Marriage Act of 1955 to a wedding ceremony in India and whether the husband intended to be bound by such a ceremony as opposed to a civil ceremony occurring in the United States at a later date. Because the issue was the validity of the Indian marriage under Indian law, as opposed to Hindu custom, the trial court did not err by refusing to treat the date of marriage alleged in the petition as a judicial admission. (*In re Marriage of V.S. & V.K.*, at pp. 221, 229–230.)

In *Marriage of Elali & Marchoud*, the court voided a marriage that occurred in Lebanon as bigamous because the husband already had a wife when he married his second wife in Lebanon. (*In re Marriage of Elali & Marchoud, supra,* 79 Cal.App.5th at p. 686.) The court reasoned that even though the marriage was valid under Lebanese law, it was void under California law. The appellate court found no error in the trial court's refusal to treat the parties' admissions that they were married as binding. (*Ibid.*)

Neither case stands for the proposition that the date of marriage is not an issue of fact. In both cited cases, there were issues raised regarding the validity of foreign marriages as a matter of law. The court's decision as to the validity of those marriages was a primarily legal issue. If anything, these cases help Katherine more than Kenny and stand for the fact that admissions as to the fact or date of marriage in a pleading are not binding upon the court. Here, the question as to whether a foreign marriage occurred was

19

entirely a question of fact to be determined by the trier of fact. Therefore, the court's finding of a 2004 marriage date is proper and supported by substantial evidence.

## III.

### THE COURT'S AWARD OF "PUNITIVE DAMAGES" WAS IMPROPER

Kenny argues the court improperly found that he had breached his fiduciary duty to Katherine when he failed to disclose deeds to the Gilbert property. Title was transferred multiple times during their marriage.[8] Kenny maintains that he was not obligated to disclose these transfers to Katherine because they were not married until January 6, 2009. He also argues that punitive damages are not awardable under the Family Code. Kenny did not otherwise contend the breach of fiduciary duty finding was improper.

When the trier of fact has found a breach of fiduciary duty, "'[t]he trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.'" (*In re Marriage of DeSouza* (2020) 54 Cal.App.5th 25, 33.) This court reviews a trial court's ruling regarding the appropriate remedy for a breach of fiduciary duty for abuse of discretion. (*See In re Schleich* (2017) 8 Cal. App.5th 267, 284.)

The Family Code provides spouses have a fiduciary duty to each other in the management and control of the community assets and liabilities until such a time when the assets and liabilities have been divided by the

---

[8] The first title transfer occurred on January 13, 2006, a grant deed transferring title from Kenny's sister to Kenny and his sister as joint tenants. The second was a quitclaim deed on March 14, 2007, transferring title from Kenny and his sister to Kenny. In 2010, Kenny transferred the property to his trust.

20

parties or by a court. (Fam. Code, §§ 721, 1100, subd. (e), 2100.)[9] This fiduciary duty is based on the confidential relationship between spouses, and "imposes a duty of the highest good faith and fair dealings on each spouse; neither shall take any unfair advantage of the other." (§ 721, subd. (b).)

This duty requires spouses to fully disclose all assets and liabilities in which one or both parties may have an interest and to render, upon request, true and full information of all things affecting any duty that concerns community property. (§§ 721, subd. (b), 2100, subd. (c).) Section 760 defines community property as "all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state." Section 770 defines separate property as "(1) All property owned by the person before marriage. [¶](2) All property acquired by the person after marriage by gift, bequest, devise, or descent. [¶] (3) The rents, issues, and profits of the property described in this section."

We agree with Kenny that the court erred by characterizing its award of one half of the Gilbert property to Katherine as a "punitive damage award." The primary goal of family court is to resolve disputes and create a fair distribution of assets and responsibilities, not to punish a party financially. As such, punitive damages, a creature of tort law, are not awarded in family law cases.

As discussed *ante,* the court properly found the marriage date was 2004. Thus, the Gilbert property could reasonably be considered community property under section 760, entitling Katherine to half of its value. Kenny's argument that the Gilbert property was his separate property

---

[9] All further statutory references are to the Family Code unless otherwise indicated.

21

under section 770 fails because he acquired the property after the 2004 marriage date. On remand, the court must reconsider this portion of the judgment. If it was the court's intent to characterize the Gilbert property as community property based on the date of marriage, or to award half the property to Katherine based on a breach of fiduciary duty (§ 1101), the court may do so, and issue appropriate orders.

IV.

NONTERMINATING SPOUSAL SUPPORT IS PROPER DUE TO THE PARTIES LONG-TERM MARRIAGE.

Finally, Kenny argues that the court erred by awarding nonterminating support because the parties did not have a long-term marriage. The Court of Appeal "review[s] spousal support orders under the abuse of discretion standard, examining the order for factual and legal support." (*In re Marriage of Brewster & Clevenger* (2020) 45 Cal.App.5th 481, 514.) The generally accepted test for "abuse of discretion is whether or not the trial court exceeded the bounds of reason, all of the circumstances before it being considered." (*Marriage of Connolly* (1979) 23 Cal.3d 590, 598.) In awarding spousal support, the trial court has broad discretion. (See *In re Marriage of Prietsch & Calhoun* (1987) 190 Cal.App.3d 645, 663.) The Family Code defines a long-term marriage "as a marriage of 10 years or more, from the date of marriage to the date of separation." (§ 4336, subd. (b).)

The court found that the parties had a long-term marriage that began in 2004 based on the testimony of the parties. As such, the court awarded Katherine spousal support of $145 per month payable by Kenny until her remarriage or the death of either spouse. When discussing the balance of hardships, the court noted Kenny has successfully been able to navigate owning two homes, having almost five adult children, operating a

22

successful business, and supporting himself in retirement. Katherine relocated to the United States for her husband, raised their son, and had almost no vocational skills that would allow her to maintain a standard of living above the California state poverty line. The court was within its discretion to consider these factors amongst others when awarding spousal support. Because the court's date of marriage finding is proper, the court's award of nonterminating support was proper as well.

## DISPOSITION

The motion to strike is granted. The portion of the court's order characterizing the award to Katherine of half the net equity in the Gilbert property as a "punitive damage award" is reversed. On remand, the court shall reconsider and modify the order in a manner consistent with this opinion. In all other respects, the judgment is affirmed. Katherine is entitled to her costs on appeal.


MOORE, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


DELANEY, J.

23